**HIBERNIA NATIONAL BANK**

v.

**August PEREZ, III.**

**Civ. A. No. 90–2080.**

United States District Court,
E.D. Louisiana.

Feb. 21, 1991.

John C. Davidson, Lemle & Kelleher, New Orleans, La., for plaintiff.

Gordon F. Wilson, Jr., Friend, Wilson & Draper, New Orleans, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

Before the court is an appeal from the bankruptcy court brought pursuant to 28 U.S.C. section 158(a). The appellant, August Perez, filed for a Chapter 7 liquidation and was denied a discharge by the bankruptcy court. Hibernia National Bank has filed a cross-appeal.

## I. STANDARD OF REVIEW

■ On appeal from the bankruptcy court, the district court is bound by Bankruptcy Rule 8013 to set aside factual findings only if clearly erroneous. Legal conclusions may be reviewed de novo.

## II. BURDEN OF PROOF

■ The bankruptcy court applied the clear and convincing evidentiary burden of proof in deciding whether August Perez (Perez) should be denied a discharge. Hibernia National Bank (Hibernia) insists that a preponderance of the evidence standard should have been used. This court finds that the bankruptcy court was correct in using the clear and convincing standard on the issue of fraud under sections

727(a)(2) and (a)(4). Despite a split of authority on this issue, the court agrees with the bankruptcy judge that the "extreme remedy" of denying a petitioner a discharge "should be administered only where the evidence clearly and convincingly proves wrongdoing." *Hibernia Nat'l Bank v. August Perez, III* (In the Matter of August Perez, III), Ch. 7 Case No. 97–03249B, Adv. No. 88–0003–B, slip op. at 9 (E.D.La.1990); *see also In re Garcia,* 88 B.R. 695, 699–702 (E.D.Pa.1988) and cases cited therein. In addition, prove of fraud in other contexts has always required a greater burden of proof than mere preponderance of the evidence. *See In re Garcia,* 88 B.R. at 701–02 and cases cited therein.

However, in regard to the other counts not involving fraud, a preponderance of the evidence standard should have been used. This standard is the commonly used standard in civil cases and in the absence of any allegations of fraud, the court finds no cause for imposing the stricter clear and convincing standard.

III. ISSUES PRESENTED ON APPEAL BY PEREZ

The appellant, August Perez, III, presents five issues on appeal: (1) whether the bankruptcy judge erred as a matter of law or made clearly erroneous findings of fact in denying the discharge of Perez on the grounds that Perez failed to give a satisfactory explanation concerning jewelry, furs, and home furnishings contained in financial statements dated December 31, 1985 but not contained in subsequent financial statements dated December 31, 1986 or in the schedules which accompanied his bankruptcy petition for relief; (2) whether the bankruptcy judge erred as a matter of law or made clearly erroneous findings of fact in enlarging sua sponte plaintiff's complaint to include an 11 U.S.C. section 727(a)(2)(A) [1] count concerning Perez's disposition of income tax refunds in his findings of fact and conclusions of law entered several months after the trial of the merits

of the action; (3) even if the section 727(a)(2)(A) count had been before the court properly, whether the bankruptcy judge erred as a matter of law in denying the discharge of Perez on grounds of a section 727(a)(2)(A) violation; (4) even if the section 727(a)(2)(A) count had been before the court properly, whether the bankruptcy judge's finding of facts on the section 727(a)(2)(A) issue were clearly erroneous; and (5) whether the action should be remanded to the bankruptcy court with instructions for further proceedings.

A. *Explanation of Jewelry, Furs, and Furnishings*

■ The findings of fact as determined by the bankruptcy judge in regard to the jewelry, furs, and furnishings at issue are as follows: On a December 31, 1985 financial statement, Perez listed among his assets the following items: furnishings at 210 Avenue E, Metairie, Louisiana (the marital domicile, owned by Perez's wife, Cheryl), with a cash basis of $26,403.06 and a market basis of $21,122.00, and jewelry and furs with a cash basis of $47,883.63 and a market basis of $62,248.72. Perez's 1986 financial statement did not list these assets. When asked to explain the deletion of the assets from his financial statement, Perez stated that the furnishing, jewelry, and furs were the property of his wife, from whom he is separate in property. Perez also stated that the assets should not have been included in his 1985 financial statement.

The bankruptcy judge also found that a list of jewelry and furs compiled for insurance purposes does not indicate the source of acquisition of the items. Neither was the source of acquisition given for the furniture in response to a request for this information by Hibernia.

The above factual findings are supported by the record. Based on these findings, the bankruptcy judge concluded that the debtor had failed to explain adequately why the items belonged to his wife and

---

**1.** 11 U.S.C. section 727 and its subparts will hereinafter be referred to by section number only.

why they should not have been listed on his financial statement. As this is a legal conclusion, this court will review it de novo.

The court must determine whether Perez's explanation satisfies section 727(a)(5), which states that a court shall not grant a discharge to a debtor if the debtor "has failed to explain satisfactorily ... any loss of assets." 11 U.S.C. section 727(a)(5). Hibernia has borne its burden of proving by a preponderance of the evidence that assets disappeared; the financial statements clearly included assets in Perez's estate in 1985 that were no longer included in 1986.

Perez explained the loss of the listed assets from his estate by stating that the assets actually belonged to his wife; they never belonged to him. Perez also produced insurance policies dating from the early 1980s that listed most of the items as property insured by Cheryl Perez under her homeowners policy covering the Avenue E residence. The full-length mink and a nutria jacket were not added to the insurance policy until the policy beginning in August, 1985, which indicates that the furs were not acquired until that year. However, the list of gifts exchanged between Perez and his wife that year does not include these furs.

Perez's explanation does not satisfy the court. Because Cheryl Perez owns the home, it is not surprising that she took out the homeowner's policy. That fact is not indicative of the true ownership of any of the items in the home. The court has not been provided with any indication of why the assets are actually owned by Cheryl Perez. Perez has not proven by a preponderance of the evidence that the listing of the assets on his 1985 financial statement was a mistake. Indeed, the court is concerned that it was the deletion of the assets from the 1986 financial statement that was the mistake. The court is unwilling to allow a debtor to explain away the loss of

assets from his estate by simply disclaiming ownership as such a practice could too easily be abused.

## B. Enlargement of the Pleadings by the Bankruptcy Judge

During the year prior to the filing of Perez's petition, the Perez's, who file joint income tax returns despite being separate in property, received approximately $290,-000 in tax refunds. Perez and his wife split the refund equally. The bankruptcy court found that the refund was attributable to overpayments from Perez's salary and to net operating loss deductions. Only 15% of the refund attributable to the loss carryback was Cheryl Perez's property. The court finds these facts to be correct.

 The bankruptcy judge went on to find a violation of section 727(a)(2)[2] although Hibernia had not pled this section in regard to the tax refunds. Hibernia had contended that Perez violated section 727(a)(4)(A).[3] Perez argues that the bankruptcy judge improperly enlarged the pleadings. The bankruptcy court's finding on this issue can be reversed only on a showing of abuse of discretion. *See Hall v. National Supply Co.*, 270 F.2d 379 (5th Cir.1959); Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d, section 1493, p. 41 (West 1990).

Federal Rule of Civil Procedure 15(b) allows amendments to the pleadings to conform to the evidence presented. The Rule states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The 727(a)(2) theory was not tried by express consent of the parties; it was not among the theories asserted by Hibernia in the pretrial order.

The Fifth Circuit has stated that implied consent "depends on whether the parties

---

**2.** Section 727(a)(2) states that the court shall not grant the debtor a discharge if he, "with intent to hinder, delay, or defraud a creditor," transfers or conceals his property within one year before the date of the petition. 11 U.S.C. section 727(a)(2). The court found earlier that the

debtor's intent to defraud must be proved by clear and convincing evidence. *See* Part II.

**3.** Section 727(a)(4)(A) states that a court shall not discharge a debtor who, knowingly or fraudulently, made a false oath in connection with his case. 11 U.S.C. section 727(a)(4)(A).

recognized that an issue not presented by the pleadings entered the case at trial." *Jimenez v. Tuna Vessel "Granada"*, 652 F.2d 415, 421 (5th Cir.1981). If a party fails to "recognize the significance of evidence and so fails to contest it, he cannot realistically be said to have given his implied consent." *Id.* Implied consent is not to be inferred lightly; the court must consider the issue of due notice. *Id.* at 422.

The bankruptcy judge relied on *In re Nett*, 70 B.R. 868 (W.D.Wisc.1987), in support of a Rule 15(b) amendment. The *Nett* court stated that a court must consider whether the defendant would be prejudiced by the implied amendment. *Id.* at 871 (quoting 3 *Moore's Federal Practice*, para. 15.13(2), at 15–130–31 (2d ed. 1985)). A two-prong test was used to determine implied consent: "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Id.* at 872 (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)). The *Nett* court also stated that implied consent could be found "if the opposing party itself presents evidence on the matter." *Id.* at 873 (citing *Hardin*, 691 F.2d at 457).

The court finds that Perez was aware that the evidence as presented could support a claim under section 727(a)(2)(A) rather than under the pled section 727(a)(5). In the pretrial order, in defense of Hibernia's section 727(a)(5) claim, Perez states: "Had there been intent to hinder, delay, or defraud a creditor by this transaction [giving Cheryl Perez half of the tax refunds], surely Mr. Perez would have deferred filing his petition for the few short weeks which would have ensured that the transaction occurred more than a year before filing." Pretrial order, Summary of Material Facts Claimed by Defendant, p. 9–10.

This statement has no relevance to a section 727(a)(5) claim. Perez was aware that defrauding a creditor by transferring assets was a section 727(a)(2)(A) issue. His statement in the pretrial order indicates to this court that he had notice that evidence at trial could support a violation of section 727(a)(2)(A) in regard to the disposition of the tax refund. After reviewing the evidence and the law, the court finds no abuse of discretion on the part of the bankruptcy judge.

## C. *Violation of Section 727(a)(2)(A)*

■ The debtor's third and fourth objections can be dealt with together. Perez argues that even if the section 727(a)(2)(A) count was before the court properly, the bankruptcy court made clearly erroneous findings of fact on the issue and erred as a matter of law in denying the discharge of Perez on this basis.

The bankruptcy judge found Perez transferred one-half of the tax refunds to his wife although she was entitled to only 15% of the refund attributable to the loss carryback. The bankruptcy judge also found that the debtor was knowledgeable enough about the legal effects of being separate in property from his wife to realize that his wife was not entitled to one-half of the refunds.[4] These findings are not clearly erroneous and will not be disturbed by this court. The bankruptcy judge concluded from these facts that the debtor transferred his property to his wife with the intent, if not to defraud, at least to hinder their discovery of and access to his assets.

Hibernia's initial burden was to produce evidence supporting its objection to the debtor's discharge under section 727(a)(2)(A). Hibernia's ultimate burden was to prove, by clear and convincing evidence, actual intent to hinder, delay, or defraud creditors. *In re Devers*, 759 F.2d 751, 753 (9th Cir.1985). Hibernia introduced evidence that Perez knew the legal effects of a separate property regime. He was certainly aware that the refunds stemmed in large part from taxes on money he had earned and on a loss carryback largely owed to him. This evidence was sufficient to support the conclusion that Perez knew that half of the tax refunds did not belong to his wife. His argument oth-

---

**4.** There is no doubt that in a separate property regime, tax refunds belong to the spouse who initially paid the taxes. No error of law was made on this point by the bankruptcy judge.

erwise was rejected by the bankruptcy court. Hibernia introduced other evidence that showed that Perez was faced with a number of financial problems at the time of the transfer.[5] The implication was that Perez intentionally transferred his money to his wife to evade the efforts of creditors.

■ Intent to defraud "may be established by circumstantial evidence or by inferences drawn from a course of conduct." *Id.* at 753–54 (citing *Farmers Co-op Assoc. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)). A court "may deduce fraudulent intent from all the facts and circumstances of a case." *Id.* In light of the factual findings of the bankruptcy judge, the most rational inference is that Perez transferred the money with the intent to hinder his creditors.

Perez defends his action by arguing to this court that if he had intended to defraud his creditors, he would have waited another month to file for bankruptcy. In that way, he would have fallen outside the purview of section 727(a)(2)(A)'s one-year window. This argument is not persuasive. The issue of the tax refunds was unlikely to be in Perez's mind when he filed his bankruptcy petition; considering his complex business and personal dealings, for Perez to have foreseen an objection to discharge on this particular issue would be almost unbelievable. Therefore, to this court, the failure to wait a year does not evidence his good faith belief that Cheryl Perez was entitled to the money.

Considering the court's conclusions, the debtor's request for a remand to the bankruptcy court is moot.

## IV. ISSUES PRESENTED ON CROSS–APPEAL BY HIBERNIA NATIONAL BANK

Hibernia raises three issues on appeal: (1) whether the bankruptcy judge erred in denying Hibernia's objection to discharge under sections 727(a)(2) and (a)(7) involving the related companies of Perez; (2) whether the bankruptcy judge erred in denying Hibernia's objection to discharge under sections 727(a)(2)(A) and (a)(4)(A) regarding Perez's income; (3) whether the bankruptcy judge erred in denying Hibernia's objection to discharge under sections 727(a)(2)(A) and (a)(4)(A) regarding Perez's interest in his residence located at 210 Avenue E, Metairie, Louisiana; and (4) whether the bankruptcy judge erred in denying Hibernia's objection to discharge under sections 727(a)(2)(B) and 727(a)(4)(A) regarding post-petition rents generated by leases of the property located at 237 Lafayette Street, New Orleans, Louisiana.

### A. *Objections to Discharge Regarding Intercompany Offsets*

■ Hibernia contends that the bankruptcy judge erred in denying the objection to discharge under sections 727(a)(2) and (a)(7) involving the related companies of Perez. Perez has operated through three tiers of corporations; each tier was controlled by a holding corporation.[6] Perez claimed that he set up the second tier of assets in response to a dispute with his former business associate R. Allen Eskew (Eskew). Eskew was a partial owner of the first tier corporations. The Eskew/Perez relationship had deteriorated and Perez did not want Eskew to receive any benefits from Perez's work in rebuilding the business.

After the second tier was established, Perez subcontracted first tier work to the second tier. New contracts were entered into by the second tier. The work of the first tier steadily diminished while the debt owed from the second tier to the first tier increased as a result of the subcontracts. The first and second tiers had many financial interactions. On February 28, 1987, an

---

5. Two months after the tax refunds were received and divided, the Banque d'Union Europeene (BUE) obtained a judgment against Perez for money owed. It must be assumed that at the time the tax refunds were received, Perez was aware that BUE was attempting to collect money from him.

6. The structure of these tiers was complex, if not confusing, and the court will not attempt to describe it.

offset was effected between the first and second tier companies that resulted in an elimination of $670,000 owed by the second tier to the first tier.

Hibernia contended that the offset was improper due to lack of mutuality. Allegedly, Perez was offsetting debt owed by company A to company B with debt owed by company B to company C. The companies are separately owned. The financial sheets prepared by the Perez companies and provided to Hibernia indicated the intercompany offsets.

Hibernia's allegation in connection with the offsets is that Perez violated section 727(a)(7), which prohibits a discharge if the debtor "has committed any act specified in paragraph (2) ... in connection with another case under this title ... concerning an insider." 11 U.S.C. section 727(a)(7).[7] Hibernia contends that the offsets represent an attempt by Perez to transfer assets with the intent to hinder, if not defraud, creditors. Hibernia's status as a secured creditor of the tier one companies was allegedly damaged as a result.

The bankruptcy judge found no violation of section 727(a)(7) because Perez disclosed his actions to Hibernia and even his intention (to protect the tier two companies from any claims asserted by Eskew). These factual findings are not clearly erroneous. The bankruptcy judge concluded that since a debtor who discloses property transactions at the first meeting of creditors is not fraudulently concealing assets, see In re Waddle, 29 B.R. 100 (W.D.Ky.1983), Perez, who revealed his transactions even earlier, could not be found to be fraudulently concealing assets. The bankruptcy judge also pointed to other facts supporting his finding.[8]

This court agrees with the findings of the bankruptcy judge. Because Perez informed Hibernia at all times of his actions

on behalf of his companies, it is difficult to find an intent to defraud or hinder Hibernia. Hibernia also claims that Perez attempted to conceal assets from Eskew, who Hibernia argues is an equitable security holder of Perez Limited, a related insider of Perez. Perez admitted he was transferring assets from the tier one to the tier two companies to prevent Eskew from claiming an interest in business that Perez developed after Eskew's departure. However, as the bankruptcy judge stated, Hibernia has not proven that Eskew was a creditor of either Perez or Perez Limited. Although Hibernia contends that Eskew has a claim against Perez Limited, it offers no proof of this claim.

B. *Objections to Discharge Regarding Salary Write-Off*

Hibernia contends that the bankruptcy court should have denied Perez a discharge under section 727(a)(4)(A) for making a false oath regarding his salary. In the last quarter of 1986 and between January and May of 1987, Perez was not paid a salary by Perez II. Hibernia contends that Perez's claim for salary should have been listed among his assets.

The bankruptcy judge found that Perez omitted this items on the advice of counsel. This finding is not clearly erroneous. Generally, if an item is omitted upon the honest advice of counsel, to whom the debtor has disclosed all pertinent facts, the item would not be deemed falsely omitted. *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974); *Hanover Capital Trust Co. v. Meyer*, 57 F.2d 815 (3d Cir.1932); *In re Morris*, 58 B.R. 422, 427 (N.D.Tex.1986). However, "the advice of counsel is not a defense when it is transparently plain that the property should be scheduled." *In re Mascolo*, 505 F.2d at 277 n. 4 (citing 1A J. Moore & J. Mulder, *Collier on Bankrupt-*

---

**7.** Section (a)(2) prohibits a discharge if the debtor transfers or removes property of the estate with the intent to hinder or defraud a creditor.

**8.** First, Hibernia alleges that the actions were taken to conceal assets fraudulently from another creditor, Eskew. The bankruptcy judge found that there had been no showing that Es-

kew was a creditor of the estate. Second, many of the actions had taken place more than one year before Perez filed for bankruptcy and so were nonactionable. Third, if the debtor had intended to defraud his creditors, he could have made sure that all offsets took place more than one year before filing for bankruptcy.

*cy,* para. 1423, n. 10 (King ed. 1974)). The court finds that determining whether the salary needed to be listed was not obvious. Perez appears to have followed the advice of his lawyer in good faith. A false oath violation was not established.

■ Hibernia also alleges that Perez's failure to list his salary accrual violated section 727(a)(2)(A). The argument is that Perez failed to indicate he was owed a salary because he intended to hinder or defraud his creditors. However, a corollary of the finding that Perez followed the advice of his lawyer in good faith in not listing the salary, is that Perez did not intend to defraud his creditors.

## C. *Objections to Discharge Regarding Rents*

■ Hibernia contends that Perez should be denied a discharge for making a false oath under section 727(a)(4) because he failed to disclose rents received from a building he owned at 237 Lafayette Street. His failure to disclose the rents also constitutes a fraudulent concealment under section 727(a)(2). In his schedules, Perez did not disclose that he was receiving rental payments from a tenant—Perez Architects/Billes–Manning Architects (PABMA). The PABMA lease was for 1,800 square feet at a rental rate of $11.00 per square foot per year, plus 17% for utilities. The lease was entered into by PABMA and Perez Architects.

PABMA was a joint venture between Perez Architects and Billes–Manning. After paying expenses common to the joint venture, two-thirds of the profit went to Perez Architects and one-third went to Billes–Manning. The space used by PABMA was the same space used by Perez Architects; it was not in any way partitioned off. The companies shared a receptionist, bathrooms, conference rooms, hallways, drinking fountains, and copy machines. The debtor states that the rent paid by PABMA went to pay its pro-rata share of expenses.

Hibernia points out that Perez Architects was occupying space in the building without a written lease with Perez. Perez Ar-

chitects, an entity without an ownership interest in the building, was in turn collecting rent from a tenant in the building. Either a lease with Perez Architects or a lease with PABMA should have been disclosed to Perez's creditor. To Hibernia, that no such disclosure was made evidences Perez's intention to defraud his creditors.

The bankruptcy judge found that Perez did not need to disclose the PABMA lease because it was between PABMA and another entity, Perez Architects, a subsidiary of Perez Corporation, and thus was not property of the estate. The bankruptcy court's finding that the lease was between PABMA and Perez Architects is not clearly erroneous. Based on this finding, this court holds that the debtor's failure to disclose the rents was not a false oath. Perez did not have an obligation to disclose rents paid to Perez Architects, a separate entity. Hibernia has offered no proof that Perez was receiving the rent through Perez Architects or that the rent was used for anything other than to pay PABMA's pro-rata share of expenses. Perhaps there should have been a lease between Perez and Perez Architects; however, Hibernia did not introduce any evidence to indicate a lease had been entered into or that such a lease was being concealed. Clearly, therefore, Hibernia has no claim under any subsection of section 727 in regard to an alleged lease between Perez and Perez Architects.

## D. *Objections to Discharge Regarding Residence at 210 Avenue E*

■ Hibernia contends that Perez knowingly and fraudulently made a false oath or account by failing to disclose his ownership interest in his residence at 210 Avenue E, Metairie, Louisiana. On April 8, 1981, Cheryl Perez purchased the home for $215,000 in cash. Neither Cheryl nor Perez have been able to identify the source of the money. Hibernia alleges that Perez supplied the money and that he thus owns the house. By not disclosing his ownership interest, Perez has allegedly made a false oath under section 727(a)(4). Hibernia also claims that the Perezes' failure to recall

the source of the money evidences an attempt by Perez to defraud his creditors.

 Although it seems odd to this court that Cheryl acquired $215,000 in separate funds whose origin she cannot recall, Hibernia has offered no firm evidence that Perez gave Cheryl the money for the house. Even if Perez did give Cheryl the money, an ownership interest in the house would not be created. Title is in Cheryl's name; legally, she has full ownership of the house. Furthermore, it is merely speculation that Perez gave Cheryl the money for the house and that he did so to defraud his creditors. Although intent to defraud may be proved by circumstantial evidence, more than suspicion is needed. The bankruptcy judge's conclusions on this charge will be upheld.

## V. CONCLUSION

Based on the above,

IT IS ORDERED that the bankruptcy court's decision to deny a discharge to the debtor be AFFIRMED.