### In re Cynthia WALKER, Debtor.

### No. 03–47645–H4–7.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 23, 2005.

---

Bertrand C. M., Attorney at Law, Houston, TX, for Debtor.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO REOPEN BANKRUPTCY CASE (DOC. # 13)

JEFFREY E.T. BOHM, Bankruptcy Judge.

Cynthia Walker (the Debtor) filed a Motion to Reopen Bankruptcy Proceedings (Doc. # 13) in the above-styled case. Kristi Plutt (Plutt), the defendant in a personal injury lawsuit filed by the Debtor (the Lawsuit),[1] contends that the Debtor should be estopped from (a) reopening this chapter 7 case, (b) amending her Schedule B to inform the chapter 7 trustee (Trustee) and her creditors of her cause of action against Plutt, and (c) refiling the Lawsuit should the Trustee abandon the personal injury cause of action to her. This Court agrees. For the reasons set forth below and by separate order issued on this date, the Debtor's Motion to Reopen Bankruptcy Proceedings is denied.[2]

---

1. The Debtor's personal injury lawsuit styled *Cynthia Walker v. Kristi Plutt,* In the United States District Court for the District of Colorado, Civil Act No. 04–N–1415 (D.Colo.2004), was dismissed without prejudice for failure to disclose and join the chapter 7 trustee as a proper party-in-interest.

2. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C.

## I. FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The facts, either as stipulated to or admitted by counsel of record, or as adduced from the testimony of the Debtor and her counsel, in chronological order, are as follows:

1. On June 7, 2003, while visiting Plutt's ranch in Colorado, the Debtor was seriously injured when a horse attacked and trampled her. She suffered serious injuries to her knee, including a pulmonary embolism that required the insertion of a metal plate into her knee. She was out of work for three months, lost her job, and was required to have additional surgery in June of 2004 to remove the metal plates.

2. The Debtor, who had been employed as a legal secretary or legal assistant for over 20 years, failed to consult an attorney immediately after the accident and did not immediately file a claim because: (a) the Debtor's sister and Plutt were friends; and (b) the Debtor believed that Colorado's equine statute probably barred any claims that could be brought against Plutt.

3. In December of 2003, the Debtor consulted an attorney, Bertrand A. Moser (Moser), to represent her in filing for bankruptcy. The Debtor cited loss of her job, medical expenses, and inability to work due to surgery, pain, and mental suffering as factors causing her bankruptcy.

4. Moser assisted the Debtor in preparing her petition for bankruptcy and completing her schedules. The Debtor reviewed the schedules before signing them.

5. The Debtor filed her voluntary chapter 7 petition on December 11, 2003 (Doc. # 1). At that time, she had not yet filed a claim against Plutt for the injury occurring in June of 2003. The Debtor testified that she did not consider her broken leg "an asset of the estate" and therefore, when filling out her schedules, did not list the accident and her broken leg as a possible claim against Plutt. The case was noticed as a "no asset" case.

6. On January 27, 2004, the Debtor and Moser attended the first meeting of creditors. The Trustee, the Debtor, and Moser reviewed her schedules at this meeting. There was no discussion about any possible claim against Plutt.

7. On or about January 29, 2004, the Debtor and Moser discussed whether to file a personal injury claim against Plutt. At this time, the Debtor entered into a contingency fee agreement with Moser whereby Moser would receive 33% of any amounts recovered in exchange for representing her on the personal injury claim.

8. On February 4, 2004, Moser sent a demand letter to Plutt in an attempt to negotiate a monetary settlement of the Debtor's personal injury claim. Moser requested that Plutt contact her insurance carrier, and that she have the carrier contact him before he filed any complaint against Plutt.

9. On or about February 5, 2004, the Debtor and Moser received the notice of Trustee's Report of No Distribution.

§ 1334 (2004) and 28 U.S.C. § 157(b)(2)(A) (2004).

10. On February 16, 2004, the Debtor sent an e-mail to her sister, a friend of Plutt, setting forth that she intended to file suit against Plutt and that she was engaging an attorney who would be taking her case on a contingency fee basis. On this same day, Plutt's attorney in Colorado, Howard Bittman (Bittman), sent a letter to Moser stating that Plutt and he were trying to pass the claim on to the insurance carrier and asking that Moser hold off on any legal action for a reasonable period of time.

11. On March 10, 2004, Moser responded in writing to Bittman's letter by stating that he would give Bittman "a reasonable time to resolve the insurance problem" but declaring: "If, however, there is no progress on the coverage issue within the next few weeks, I will have no alternative but to begin the litigation process." (Joint Ex. C from Feb. 24, 2005 hearing.)

12. On April 13, 2004, this Court entered a discharge in favor of the Debtor (Doc. # 9), signed the final decree (Doc. # 10), and closed the case.

13. On July 23, 2004, the Debtor filed the Lawsuit against Plutt for negligence and for injuries suffered due to the accident on June 7, 2003. In response to the Lawsuit, Plutt filed a motion for summary judgment. The basis for the motion was that the Debtor was estopped from filing the Lawsuit because: (a) the Debtor's cause of action arose prior to the date she filed her chapter 7 case; and (b) the Debtor's failure on her schedules to list the claim against Plutt as a potential cause of action estopped her from now pursuing the claim.

14. In November of 2004, the United States District Court for the District of Colorado dismissed the Lawsuit without prejudice.

15. On December 7, 2004, the Debtor filed her Motion to Reopen Bankruptcy Proceedings (the Motion) (Doc. # 13). The Motion requests that the Debtor's chapter 7 case be reopened so that the Debtor could amend her schedules to include the personal injury claim that did not appear as an asset in her initial schedules.

16. On January 10, 2005, Plutt filed a Response opposing the Motion (Doc. # 16). Plutt asserts that the Debtor's failure to list the cause of action in her initial schedules now precludes a reopening of her bankruptcy case so that the claim can be scheduled and subsequently prosecuted.

17. On February 9, 2005, the hearing on the Motion and Response was held. At the hearing, the Debtor testified that she does not intend to exempt the claim from creditors if the Motion is granted, but rather desires for the Trustee to analyze and, if appropriate, prosecute the claim. However, the Debtor also testified that in the event that the Trustee abandons the claim, and the Debtor then prosecutes the claim and recovers money, she would not commit to using the proceeds to pay creditors.

18. On February 24, 2005 a further hearing was held, at which time additional evidence was introduced and additional testimony was adduced. The Court took the matter under advisement and now rules on the Motion.

## II. DISCUSSION

### A. Discretion to Reopen the Bankruptcy Case Rests with this Court.

 § 350 of the Bankruptcy Code governs the Motion.[3] § 350(b) provides that the Court may reopen a closed case in order to administer assets, accord relief to the debtor, or *for other cause.* 11 U.S.C. § 350(b) (2004) (emphasis added). The term "for other cause" is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown. *Matter of Case*, 937 F.2d 1014, 1018 (5th Cir.1991). A bankruptcy court must consider the facts presented in each case and use its discretion to determine whether cause exists to reopen a case. *See In re Koch*, 229 B.R. 78, 88 (Bankr.E.D.N.Y.1999) ("The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case."); *In re Winebrenner*, 170 B.R. 878, 881 (Bankr.E.D.Va.1994). A bankruptcy court need not reopen a case when "the chance of any substantial recovery for creditors appears too remote to make the effort worth the risk." *In re Lopez*, 283 B.R. 22, 28 (9th Cir. BAP 2002) (internal citations omitted). Moreover, the longer the time between the closing of the estate and the motion to reopen, the more compelling the reason for reopening the estate should be. *See Matter of Case*, 937 F.2d at 1018 (citing to *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir.1962)).

Based on the particular circumstances of this case and the length of time between the closing of the estate and the motion to reopen, this Court finds the Debtor's reasons for reopening the estate insufficient. The Debtor seeks to reopen this case for the sole purpose of adding a previously omitted personal injury cause of action to her schedules. When the Debtor began pursuing the cause of action in January of 2004 while the bankruptcy was still pending, however, she failed to timely amend her schedules. Only after the Lawsuit was dismissed did the Debtor seek to reopen her case—some eight months after her bankruptcy case was closed.[4] The only reason for reopening that the Debtor offers this Court is that her failure to timely amend was an innocent mistake and that she did not know that the cause of action was a potential asset of the estate.

The extended lapse of time between the Debtor's current Motion and the closure of her chapter 7 case demands a more compelling reason for this Court to reopen the case. *See Matter of Case*, 937 F.2d at 1018. Faced not only with considering the Debtor's less than convincing reason for reopening, but also the doctrine of judicial estoppel,[5] this Court finds insufficient basis to reopen the case.

---

3. All references to the Bankruptcy Code herein are references to 11 U.S.C. § 101 *et seq.*

4. The Debtor's claim arose more than four months before the date she filed her petition for bankruptcy. Specifically, the injury giving rise to the cause of action occurred on June 7, 2003. Although the Debtor claims not to have understood that her "injured leg" could be an asset of the estate when she filed for bankruptcy in December of 2003, she consulted with her bankruptcy attorney about the claim in hopes of recovering money damages only a few days after her § 341(a) first meeting of creditors in January of 2004. Despite this discussion with her attorney, she failed to amend her schedules at that time to disclose the cause of action.

5. The application of judicial estoppel to this matter is discussed in further detail below. Briefly, under Fifth Circuit law, judicial estoppel is applicable when a party unreasonably disregards her express, affirmative disclosure duties. *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 334–36 (5th Cir.2004); *accord In re Bilstat, Inc.*, 314 B.R. 603, 608 (Bankr.S.D.Tex.2004).

## B. Judicial Estoppel Bars the Debtor from Pursuing Her Unscheduled Personal Injury Cause of Action.

 Generally, "judicial estoppel is invoked where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334–35 (5th Cir.2004) (quoting *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)). Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation. *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). "The purpose of the doctrine is to protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (internal quotations omitted). Importantly, because judicial estoppel is designed to protect the judicial system, rather than the litigants, detrimental reliance by the party opponent is not required. *Id.* (citing *Matter of Cassidy*, 892 F.2d 637, 641 & n. 2 (7th Cir.1990)).

 In the bankruptcy context, the Fifth Circuit has outlined three factors necessary to the determination of whether judicial estoppel applies. A debtor or her successor-in-interest is precluded by judicial estoppel from bringing a suit against a defendant if: (1) the party asserting the claim is taking a position clearly inconsistent with a position taken in a previous proceeding; (2) the court accepted the previous position; and (3) the non-disclosure was not inadvertent. *See Superior Crewboats*, 374 F.3d at 335. With respect to the "inadvertence" prong in bankruptcy cases, the Debtor's express, affirmative duty to disclose all assets, *including contingent and unliquidated claims and/or causes of action,* is a continuing one and cannot be overemphasized. *See Coastal Plains,* 179 F.3d at 207–08. "[T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Id.* at 210. A review of the facts in the case at bar demonstrates that all three elements have been met.

 *1. Inconsistent Statement.* In the case at bar, the first prong of the Fifth Circuit's three-point test is easily satisfied. The Debtor's pleadings in the Lawsuit and in the Motion are clearly inconsistent with the prior filings and proceedings related to her schedules and her chapter 7 case. Specifically, the Debtor failed to disclose the personal injury cause of action in her schedules. She also failed to mention the potential cause of action to the Trustee during the first meeting of creditors, or at any time during the pendency of her case. The Debtor's omission was tantamount to representing that the claim did not exist and, therefore, is inconsistent with the position taken by the Debtor in the Lawsuit and now in the Motion. *See Superior Crewboats,* 374 F.3d at 335.

 *2. Acceptance of Previous Position.* The second prong of the Fifth Circuit's test—the court accepted the previous position—is also satisfied. *See id.* This Court accepted the Debtor's previous position when, on April 13, 2004, the Court signed an order granting a discharge to the Debtor and signed a final decree closing the Debtor's chapter 7 case.

 *3. Inadvertence of Non–Disclosure.* The third requirement of judicial estoppel is that the non-disclosure was not inadvertent. *See id.; see also In re Bilstat, Inc.*, 314 B.R. 603, 608 (Bankr.S.D.Tex. 2004). Inadvertent failure to disclose is generally found only when the debtor ei-

ther: (a) lacks knowledge of the claim; or (b) has no motive for concealment. *See Coastal Plains,* 179 F.3d at 205.

### a. The Debtor had knowledge of the claim.

The Debtor testified that she simply was not aware that she was required to list her injury as a potential asset of the estate. The Debtor and her attorney also assert that they did not intend to deceive the Court or her creditors, and simply did not understand the full extent of the information requested under Question 20 of Schedule B.[6] These explanations are insufficient to demonstrate that the Debtor lacked knowledge of the claim.

The Debtor certainly had knowledge of the facts underlying her cause of action immediately after her injury in June of 2003. Moreover, at the very latest—and probably much earlier—the Debtor had actual knowledge of her claim against Plutt when she consulted with her attorney and began threatening litigation in January of 2004.[7] Neither her failure to carefully examine the information and disclosure questions posed in her schedules nor her assertion of lack of experience negates the fact that the Debtor had knowledge of the claim. *See Superior Crewboats,* 374 F.3d at 335 (holding that debtors could not evince a lack of knowledge of their personal injury claim based on confusion as to the limitations period). Furthermore, the Debtor's argument that there was confu-

sion as to whether her personal injury claim was viable under Colorado law does not shore up lack of knowledge. *See id.* Even after filing the Lawsuit, it was not until the Lawsuit was dismissed for lack of standing that the Debtor attempted to correct her omission of the cause of action against Plutt. Under current Fifth Circuit analysis, such reckless disregard of the Debtor's express, affirmative duty to disclose satisfies the third prong and requires application of judicial estoppel. *See id.; see also Casey v. Peco Foods, Inc.,* 297 B.R. 73, 76 (S.D.Miss.2003).

 The Debtor's reliance on her attorney, likewise, relieves her neither of her affirmative duty to disclose nor of the diligence required to ensure the Court that her sworn statements remain true. *See In re Sholdra,* 249 F.3d 380, 383 (5th Cir. 2001) (holding that: (a) the debtor's purported inexperience with financial affairs did not negate the fact that he made false oaths by knowingly swearing to false information and (b) the debtor's reliance on the advice of counsel did not relieve the debtor of his duties); *cf. Hibernia Nat'l Bank v. Perez,* 124 B.R. 704, 710 (E.D.La.1991) ("[T]he advice of counsel is not a defense when it is transparently plain that the property should be scheduled.") (internal quotations omitted), *aff'd,* 954 F.2d 1026 (5th Cir.1992). For all of these reasons, there is no doubt that the Debtor had knowledge of the claim against Plutt.

---

6. Question 20 in Schedule B required the Debtor to list any of the following assets: "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." This language is hardly confusing, particularly when the Debtor is a former legal secretary and legal assistant, and she is represented by counsel.

7. Given the fact that the Debtor had been employed as a legal secretary or legal assistant for over twenty years, the Court is skeptical that the Debtor did not have actual knowledge of her claim against Plutt well before January of 2004, but her own testimony unequivocally shows that she knew about the claim by no later than January 29, 2004. This date was several weeks prior to the Debtor receiving her discharge, and yet she failed to disclose the claim.

### b. The Debtor had motive to conceal the claim.

The Debtor had the requisite motivation to conceal the claim, as she would certainly obtain a windfall had she been able to recover on the undisclosed claim without first allowing her creditors to assert an interest in the proceeds. *See Superior Crewboats*, 374 F.3d at 336. As held by the Fifth Circuit in *Superior Crewboats*, 374 F.3d 330 (5th Cir.2004), and by the First Circuit in *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir.1993), such a result would permit debtors to "[c]onceal [all their] claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights." *Payless*, 989 F.2d at 571.

Still, the Debtor argues that judicial estoppel is only applicable in cases wherein a clearer finding of "bad faith" is satisfied. As previously discussed, however, by emphasis on the substantial affirmative disclosure duties of a debtor in bankruptcy cases, the Fifth Circuit has found that judicial estoppel does not necessarily require "bad faith" or deceptive intent *per se;* the inadvertence of the non-disclosure prong is satisfied when a debtor unreasonably disregards her express, affirmative disclosure duties. *See Coastal Plains*, 179 F.3d at 210–13; *see also Bilstat*, 314 B.R. at 610. As noted by the Honorable Wesley W. Steen in *Bilstat:*

> A failure to disclose information (leaving a 'blank') in a bankruptcy schedule or statement of financial affairs is an affirmative statement that there is no information reasonably available to the Debtor that is responsive to that question. An incorrect affirmative statement is not inadvertence.

*Bilstat*, 314 B.R. at 610. The Fifth Circuit's emphasis on a debtor's affirmative duty to disclose leads to a determination that the Debtor's omission in the case at bar is the kind of gross omission and reckless disregard that alone satisfies the "bad faith" element necessary to find judicial estoppel.[8]

Finally, even if this Court was persuaded by the Debtor's arguments that a greater showing of "bad faith" was required, this Court finds that there is sufficient bad faith due to the actions and concealment *by the Debtor's attorney.* Moser testified that he first became aware of the Debtor's injuries in June of 2003. He also testified that a few days after the first meeting of creditors on January 27, 2004, he accepted representation in the personal injury cause of action pursuant to a contingent fee agreement. Thus, after assisting the Debtor in filing her bankruptcy petition in December of 2003, helping her prepare her schedules in the same month, and attending the first meeting of creditors with her on January 27, 2004, Moser agreed in late January of 2004 to prosecute the cause of action and accepted a 33% interest in recovery of the undisclosed claim. Moser then immediately instigated discussion with Plutt's attorney regarding a settlement with Plutt's insurance carrier. Despite the fact that he was attorney of record for the debtor in this case and

---

8. There were two hearings regarding the Motion. At the close of the first hearing, this Court noted that the Debtor did not appear to have intentionally deceived the Court by failing to schedule the claim. However, at the second hearing, the Debtor flippantly dismissed her failure to schedule an additional, potential asset of the estate—her horse. Although the Debtor may have had no intent to deceive this Court, this Court finds this additional testimony from the Debtor indicative of her careless disregard for the truth. Such obvious disregard for the bankruptcy system and disclosure requirements provides further basis for this Court to focus closely at her failure to schedule the personal injury claim and conclude that the "bad faith" element is satisfied.

responsible for all of the duties that this position carries—including a duty of candor to this Court—and despite communications with the Trustee at the first meeting of creditors, Moser failed to alert the Court or the Trustee of the claim or the threatened suit. Rather, he remained silent. Moser had the requisite motive to conceal the Debtor's cause of action—namely, his contingent interest in any recovery on the undisclosed claim without having to share the proceeds with any creditors of the Debtor. *See Coastal Plains,* 179 F.3d at 208–09. In light of the Debtor's affirmative disclosure duties, such deceptive behavior by her counsel of record satisfies any "bad faith" element necessary to find judicial estoppel. The Debtor, after all, is bound by the wrongful acts of her attorney. *Phillips ex rel. Estate of Fullingim v. First Nat'l Bank of Weatherford,* 258 F.Supp.2d 501, 506 (N.D.Tex. 2002); *see also Dow Chem. Co. v. Benton,* 163 Tex. 477, 357 S.W.2d 565, 567 (1962) (holding that the attorney-client relationship is one of principal and agent and that neither lawyer nor client should be permitted to select the good features of his contract and reject the bad).

### III. CONCLUSION

■ "The integrity of the bankruptcy system rests on full and honest disclosure by debtors of all of their assets." *Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y.1996). This Court finds credibility in this rationale for invoking judicial estoppel to prevent a debtor who failed to disclose a cause of action from later re-opening her case to schedule the claim and having the opportunity to prosecute it should the trustee abandon it. Allowing the Debtor to back up, re-open the bankruptcy case, and amend her schedules only after she was caught would send a message that debtors should hide their claims until challenged. *See Superior Crewboats,* 374 F.3d at 336 (citing *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir.2002)). This Court will not open the door for such a scenario; judicial estoppel was designed to avoid this result. *See id.*

■ By so ruling, the Court recognizes that its decision precludes any chance that the Trustee in this case might prosecute the cause of action and recover a judgment that, upon payment by Plutt, would be used to pay creditors, not the Debtor.[9] After all, if this Court granted the Motion and allowed the Debtor to list the cause of action on an amended Schedule B, this non-exempt asset would belong to the Trustee, not the Debtor, and the Trustee would have the right—indeed, the duty—to investigate the circumstances of the matter and decide whether to prosecute the cause of action. However, if the Trustee decided not to prosecute, and then abandoned the cause of action to the Debtor, her testimony was that if she then prosecuted the suit and prevailed, she would *not* commit to using the judgment proceeds to pay the claims from which she had been discharged prior to her disclosure of the cause of action. It is just such

---

**9.** The Court notes a split regarding this issue: whereas the Fifth Circuit was apparently unpersuaded by this concern in *Superior Crewboats,* other courts have found the argument persuasive in allowing a trustee to reopen and prosecute an unlisted cause of action on behalf of creditors. *See, e.g., In re Barger,* 279 B.R. 900, 909 (Bankr.N.D.Ga.2002) (disagreeing with *Coastal Plains* and stating that "[t]he most persuasive factor for this court to weigh is the potential effect a reopening would have on the creditors of [a] debtor's estate"). *See also In re Lewis,* 273 B.R. 739, 747 (Bankr. N.D.Ga.2001) ("[T]he persuasive factor for the Court to weigh in deciding whether to reopen this case is not its effect upon the [d]ebtor or upon the [defendants] in a state court forum, but rather the effect a reopening would have on the creditors of the [d]ebtor's estate.").

a result that this Court cannot permit based upon its interpretation of *Superior Crewboats*.

Precluding the Trustee from having the opportunity to prosecute the cause of action for the benefit of creditors appears at odds with one of the two main goals of the Bankruptcy Code: payment of claims.[10] Such a result would typically lead this Court to inquire whether a more equitable resolution could be reached. On this particular issue, however, the Fifth Circuit has considered the matter and concluded that preserving the integrity of the bankruptcy system by requiring complete disclosure of assets in every case outweighs reopening one discrete case so that the trustee can examine an initially undisclosed asset that might eventually generate cash for distribution to creditors but might also be abandoned for the benefit of the non-disclosing debtor. That is the lesson of *Superior Crewboats*. This Court is bound to uphold the rationale and rulings of the Fifth Circuit, and will do exactly that in the case at bar.

For the foregoing reasons, this Court concludes that judicial estoppel bars reopening this chapter 7 case in order to preclude the possibility that the Debtor ends up prosecuting the cause of action against Plutt by virtue of the Trustee's abandonment of this asset. A separate order denying the Motion will be issued consistent with this Memorandum Opinion.[11]

## ORDER DENYING DEBTOR'S MOTION TO REOPEN BANKRUPTCY CASE

Came on for hearing the Debtor's Motion to Reopen Bankruptcy Case, and the Court, having reviewed the pleadings and having heard the testimony and oral arguments of counsel, as well as having reviewed the exhibits introduced, finds that the Motion is without merit and should be denied. It is therefore:

ORDERED that the Debtor's Motion to Reopen the Bankruptcy Case is denied in all respects.

---

**10.** "The laws and jurisprudence of bankruptcy note often that there are two competing goals of bankruptcy and reorganization. One is the satisfaction of valid claims against the estate. The other is to allow the debtor a 'fresh start' in the market place." *In re T–H New Orleans Ltd. P'ship,* 188 B.R. 799, 807 (E.D.La.1995), *aff'd,* 116 F.3d 790 (5th Cir. 1997).

**11.** The Court wishes to emphasize that its ruling is based upon the fact that the undisclosed asset in the case at bar—a cause of action—was the same type of undisclosed asset in *Superior Crewboats.* If the undisclosed asset had been of a different nature—for example, an undisclosed certificate of deposit or shares of common stock in a publicly-traded company—then the Court's ruling might have been different. Assets such as these are easily liquidated in a short period of time, and the chance of a chapter 7 trustee ever abandoning them to the debtor are extremely remote, if not nil. Under these circumstances, sound arguments might well be made for reopening the case, a result which the Court does not believe would do harm to the holding in *Superior Crewboats* because the assets would assuredly be liquidated for the benefit of creditors instead of being abandoned to the debtor.