## In re Kenneth/Lynn McVAY, Debtors.

### No. 05–74585.

United States Bankruptcy Court,
N.D. Ohio.

March 28, 2006.

Ryan C. Schrader, Toledo, OH, for debtors.

Patricia A. Kovacs, Toledo, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court after a Hearing held on two related actions: (1) the Trustee's Motion to Strike Debtors' Amendment to Bankruptcy Schedules B & C; and (2) the Trustee's Objection to the Debtors' claim of exemption in the proceeds received from the settlement of a workers' compensation claim. Both actions are based upon the Debtors' failure to disclose in their original bankruptcy filing an interest in a workers' compensation claim. Both the Trustee and the Debtors submitted to the Court for review evidence and arguments in support of their respective positions on this matter. After considering this evidence and the arguments raised by the Parties, the Court finds that the Trustee's Motion should be Denied subject to the conditions set forth herein.

## FACTS

There is no disagreement as to the operative facts. In 2002, the Debtor, Kenneth McVay, was severely injured during the course of his employment. This, in turn, gave rise to a potential workers' compensation claim.

The following year, the Debtors consulted an attorney regarding the possibility of seeking bankruptcy relief. As a part of their consultation with the attorney, the Debtors were informed that, if Mr. McVay were to receive an award from workers' compensation for his injuries, such funds would be exempt from administration by the Trustee. At that time, however, the Debtors did not file for bankruptcy relief.

In the middle part of 2005, the Debtors became aware that Mr. McVay would be-come entitled to receive a substantial settlement for his workers' compensation claim. Thereafter, but before actually receiving any settlement, the Debtors again consulted an attorney regarding the possibility of seeking bankruptcy relief. However, unlike before, the Debtors at this consultation did not disclose to their attorney the workers' compensation claim.

On October 13, 2005, the Debtors filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Mr. McVay's workers' compensation claim was not disclosed in the petition as either an asset or exempt property. Their petition, however, did disclose in schedule I, showing current income, that Mr. McVay received $720.00 per month from workers' compensation. (Doc. No. 1).

Just under one month later, Mr. McVay received his workers' compensation settlement which, after deducting for attorney fees, resulted in a lump-sum award of $109,000.00. Upon being questioned at the meeting of creditors, the Debtors disclosed this asset to the Trustee. The Debtors thereafter amended their petition so as to reflect this asset as exempt. (Doc. No. 7). However, at the time this amendment was made, most of the funds received from the settlement had been dissipated.

## DISCUSSION

The two actions brought by the Trustee present the Court with this issue for decision: Whether the Debtors, by failing to initially disclose in their petition Mr. McVay's right to receive a workers' compensation settlement, should be denied, on that basis alone, the right to claim an exemption in the settlement proceeds? The determination as to exemptions from property of the bankruptcy estate are deemed core proceedings, thus this Court has the jurisdictional authority in this mat-

ter to enter a final order. 28 U.S.C. §§ 157(b)(2)(B) & 1334.

■ Bankruptcy Rule 4003(a) sets forth that a "debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." This Rule thus expressly states what is an otherwise intuitive requirement: That as a condition precedent to the allowability of an exemption, the debtor must disclose the property to be exempted. Interestingly enough, however, nothing in this Rule, or for that matter any other bankruptcy rule, appears to require that the property against which a debtor elects to claim an exemption be disclosed at the time the bankruptcy petition is filed. To the contrary, paragraph (b) of Bankruptcy Rule 4003 affords a party-in-interest an additional 30 days to object to an exemption when a petition is amended or supplemented, thus indirectly recognizing the ability of a debtor to amend their bankruptcy petition and schedules to claim an exemption.

When an amendment to a petition is necessary, Bankruptcy Rule 1009(a) sets forth a permissive approach, providing that a "voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." But as this Court previously explained, the right of a debtor to amend a petition is not without limitation:

> The existence of this Rule [1009(a) ] recognizes the reality that, when a petition is filed, mistakes and/or omissions may occur. On the other hand, bankruptcy law imposes a duty upon the debtor— which commences at the moment a case is filed—to make a full, complete, and honest disclosure of all the information which is required to be disclosed by law. Thus, inherent in the nature of Rule 1009(a) is that a debtor's ability to amend a petition, for the purpose of correcting prior mistakes and/or omissions, is limited to situations involving inadvertence, and hence does not extend to undoing prior transgressions such as the concealment of known information.

*In re Pier,* 310 B.R. 347, 357 (Bankr. N.D.Ohio 2004) (internal citations and quotations omitted). Or as this Court has succinctly stated: a debtor cannot purge themselves of prior misconduct by simply amending their bankruptcy petition. *Crawford v. Monfort, (In re Monfort),* 276 B.R. 793, 796 (Bankr.N.D.Ohio 2001).

■ In this way, it has long been the Rule in this Circuit that when a debtor seeks to amend their petition for purposes of claiming an exemption, the amendment may be disallowed, notwithstanding the permissive approach of Rule 1009(a), upon "a finding of bad faith or when property has been concealed."[1] *Lucius v. McLemore,* 741 F.2d 125, 126 (6th Cir.1984). And it is against this limitation on which the Trustee rests the merits of her actions to disallow exemption, arguing that the Debtors acted in bad faith when they "consciously did not disclose the settlement proceeds" that they would be receiving from workers' compensation. (Doc. No. 23, at pg. 6).

■ Whether an error and/or omission made in a petition is the result of bad faith on the part of a debtor is determined on a case-by-case basis through an examination of the totality of the circumstances. *In re Lundy,* 216 B.R. 609, 610 (Bankr.

---

**1.** Although it has not been expressly recognized by the Sixth Circuit Court of Appeals, an additional ground commonly applied to bar the amendment by a debtor to a petition is prejudice to creditors. *See, e.g., Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833 (11th Cir.1982).

E.D.Mich.1998). When conducting such an examination, both the prepetition and postpetition conduct of the debtor is relevant. Mere allegations of bad faith, however, will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence. *In re Colvin*, 288 B.R. 477, 481–82 (Bankr.E.D.Mich. 2003).

▪ In support of this evidentiary requirement, the Trustee's *prima facie* case relies on what is an unassailable conclusion: based upon the timing of events, and the large sum of money involved, the Debtors had to be fully cognizant that, at the time they filed for bankruptcy relief, they held as an asset Mr. McVay's right to receive a workers' compensation settlement. And rightly, the Debtors do not take direct issue with this conclusion. Rather, the Debtors argue that their failure to disclose the workers' compensation settlement in their bankruptcy petition stems not from their unawareness of the asset, but from their subjective belief that the asset did not have to be disclosed. According to the Debtors, this belief arose because they were told, in their initial consultation with legal counsel in 2003, that any funds received from workers' compensation were "protected," thus entitling them to retain the asset.

Legally speaking of course, assets are not "protected" in bankruptcy. In a Chapter 7 bankruptcy, as filed by the Debtors, the assumption (albeit not necessarily the norm) is that a debtor's unsecured assets will be liquidated by the trustee for the benefit of the debtor's creditors. In order to retain an asset in a Chapter 7 liquidation therefore debtors will normally look to the statutory exemptions afforded to them by the Bankruptcy Code, and in rarer circumstances, a debtor may rely on the exclusion of the asset from the estate. But either way, any lack of disclosure of an asset in which a debtor has interest, even if that interest is questionable or remote, is problematic, especially one as large as here.

▪ The bankruptcy process relies on full and complete disclosure. *United States Trustee v. Halishak (In re Halishak)*, 337 B.R. 620, 631 (Bankr.N.D.Ohio 2005). As already explained, this tenet applies absolutely to exempt assets, such as that at issue, but in many instances will apply even to non-estate assets. For example, a large variety of prepetition transfers made by a debtor must be disclosed despite such property being outside the estate. (Of course, in some instances, the property may be subsequently brought back into the estate by virtue of a trustee's avoiding powers, 11 U.S.C. § 541(a)(2)). Consequently, as this Court has previously pointed out with respect to matters involving good faith and disclosure: when in doubt, disclose. *Id.* at 630.

Under this light, what becomes hard to reconcile is this particular point raised by the Trustee: why did the Debtors disclose other exempt assets in their petition—e.g. household goods, clothes etc.—but not the workers' compensation claim? In other words, the Debtors' position is inconsistent; if they believed that "protected" assets—that is, exempt assets—did not have to be disclosed, then why choose to disclose some "protected" assets and not others. It would thus seem that the Debtors, although pleading ignorance to the Court, were nevertheless able to conclude, without the advice of legal counsel, that in bankruptcy only "protected" assets of a minor value need be disclosed; assets of a significant value do not. This nonchalant posture regarding the settlement proceeds also has other facets.

To begin with, in the short time following their receipt of the workers' compensation settlement, and before the meeting

of creditors, the Debtors saw fit to dissipate the majority of the funds they received in the settlement. It appears to have never even crossed the Debtors' mind that maybe they should consult with their legal counsel when, on the one hand they were seeking to discharge tens of thousands of dollars in unsecured debt, while on the other, they were receiving a settlement of over one hundred thousand dollars. It must also be considered that, although much of their settlement money does appear to have been used to pay for essentials such as housing, questionable expenditures also exist. For example, the Debtors purchased horses and spent lavishly on their son's birthday party. In addition, even at the time of the Hearing held in this matter, the Debtors were still unable to account for approximately $20,000.00 of the funds Mr. McVay received in the workers' compensation settlement. (Ex. No. 26).

Still, in shifting tempo, it cannot be overlooked that there exists no statutory authority for the disallowance of an exemption based solely upon the asset's nondisclosure, even if the omission of the asset was for reasons other than inadvertence. Instead, for debtors who are less than honest with respect to their bankruptcy petition, the Bankruptcy Code contemplates an alternative sanction: the denial/revocation of discharge. 11 U.S.C. § 727(a); *In re McKain*, 325 B.R. 842, 848 (Bankr.D.Neb.2005). In light of their different policy considerations, this distinction,—whereby a debtor's discharge, but not their right to exemption, is expressly conditioned upon a full and honest disclosure—is not without reason.

A bankruptcy discharge is a privilege, intended to provide not only a debtor with a fresh start but to afford a debtor's creditors an equitable distribution of the debtor's assets, twin goals which can only be fulfilled if a debtor is completely honest. *See, e.g., Village of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). Exemptions, on the other hand, are meant to allow a debtor to maintain life's basic necessities so as to prevent that burden from falling upon the state, a concern which does not disappear simply because a debtor is not afforded a bankruptcy discharge. *In re Robinson*, 292 B.R. 599, 606 (Bankr.S.D.Ohio 2003) (observing that the purpose of exemptions is to provide a debtor with a "grub-stake" to begin a fresh start and to act as a safety net so that the debtor and his family are not completely impoverished and forced to become wards of the state due to collection activities or bankruptcy). It follows then that in the absence of any explicit authority, and for reasons of policy, equitable considerations will weigh heavily in any action whereby a party seeks to disallow a debtor's exemption based solely upon the debtor's initial failure to disclose the asset. *See United States v. Energy Resources, Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990) (bankruptcy courts are courts of equity). And when placed in an equitable light, a number of factors do mitigate against the existence of any artifice on the Debtors' part.

First, the Court finds it credible that both of the Debtors were genuinely confused as to how the bankruptcy process meshed with Mr. McVay's workers' compensation claim. A couple of points here are worth noting. Of initial importance, since Mr. McVay's accident, it would appear that his cognitive abilities have not been the same. And in this way, there is no question that the injuries giving rise to Mr. McVay's workers' compensation claim were very serious, and continue to affect him to this day. Additionally, the evidence shows that neither of the Debtors ever completed any course of study beyond

high-school; nor is either of the Debtors employed in the professional sector. It thus seems credible that, at least in so far as it concerns the matters which are before the Court, neither of the Debtors has any meaningful sophistication. See *Northeast Alliance Fed. Credit Union v. Garcia (In re Garcia)*, 260 B.R. 622, 631 (Bankr. D.Conn.2001) (a court may consider a debtor's educational level and business experience in determining matters of concealment).

Similarly fitting into this equation, the Court's review of the transcript from the meeting of creditors also does not indicate any concealment, with the Debtors' not hesitating to disclose the workers' compensation settlement when questioned. (Ex. No. 2, at pgs. 4–6). The Court also cannot overlook that, under Ohio law, the funds received from a workers' compensation settlement are fully exempt,[2] and that the Debtors were at least partially cognizant of this fact because, in their minds, the entire asset was "protected." Taking this a step further, it would seem that the Debtors were subjectively aware that they stood nothing to gain by the asset's nondisclosure, a fact which does not fit the typical paradigm: normally, a debtor concealing an asset in bad faith does so with the knowledge that it may be subject to liquidation by the trustee, thus providing a motive to conceal the asset. *In re Walker*, 323 B.R. 188, 195–96 (Bankr.S.D.Tex.2005)

Also not fitting the typical paradigm, and what finally, in this Court's estimation, tips the balance ever so slightly in favor of the Debtors is this fact: set forth in schedule I of their bankruptcy petition, the Debtors disclosed that Mr. McVay was receiving income from workers' compensation. As has been noted before, one does not normally attempt to hide information in a bankruptcy petition by disclosing it in

the "wrong place." Rather, one hides information by not disclosing it "at all." *Rutland v. Petersen (In re Petersen)*, 323 B.R. 512, 516 (Bankr.N.D.Fla.2005); *In re St. Angelo*, 189 B.R. 24, 26–27 (Bankr. D.R.I.1995).

Notwithstanding, given the weight of those countervailing considerations discussed earlier, equity cannot allow the Debtors to simply walk away from this matter. The Trustee was fully justified in bringing this action. Thus, based upon this Court's equitable powers, the allowability of the Debtors' amendment to their petition to claim the exemption in Mr. McVay's workers' compensation settlement will be conditioned upon the Debtors timely reimbursing the Trustee for all the fees and expenses she incurred in prosecuting her actions. 11 U.S.C. § 105(a).

In summation, when viewed in light of all the circumstances just discussed, it appears more likely than not that the Debtors' failure to list as an asset Mr. McVay's workers' compensation claim was not done in bad faith or otherwise with the intent to conceal its existence. Thus, the Court, although finding it a very close call, comes to the conclusion that the equities in this matter bend toward allowing the Debtors to maintain their exemption in Mr. McVay's workers' compensation claim. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Trustee, Patricia Kovacs, provide to the Debtors, Lynn and Kenneth McVay, an itemized accounting of those fees and expenses she incurred to prosecute her actions to disallow the Debt-

---

2. O.R.C. §§ 2329.66(A)(9)(b), 4123.67.

ors' claim of exemption in the settlement proceeds Mr. McVay received from workers' compensation.

It is **FURTHER ORDERED** that, unless an objection is filed against the propriety of the Trustee's fees and expenses, the Debtors timely reimburse the Trustee for her fees and expenses; the Trustee shall then certify to the Court the receipt of her fees and expenses.