ELECTRONIC CITATION: 2008 FED App. 0006P (6th Cir.)
File Name: 08b0006p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: RALPH WENDELL SWEGAN, ) | |
| ) | |
| ) | |
| Debtor. ) | No. 07-8006 |
| _____ ) | |
| ) | |
| ) | |
| BUCKEYE RETIREMENT CO., LLC, LTD., ) | |
| ) | |
| Plaintiff - Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| RALPH WENDELL SWEGAN, ) | |
| ) | |
| Defendant - Appellee. ) | |
| _____ ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
No. 04-4256.

Argued: November 14, 2007

Decided and Filed: March 19, 2008

Before: AUG, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Scott D. Fink, WELTMAN, WEINBERG & REIS CO., L.P.A., Cleveland, Ohio, for Appellant. Michael D. Buzulencia, LAW OFFICES OF MICHAEL D. BUZULENCIA, Warren, Ohio, for Appellee. **ON BRIEF:** Scott D. Fink, WELTMAN, WEINBERG & REIS CO., L.P.A., Cleveland, Ohio, for Appellant. Michael D. Buzulencia, LAW OFFICES OF MICHAEL D. BUZULENCIA, Warren, Ohio, for Appellee.

---

**OPINION**

---

JOSEPH M. SCOTT, JR., Bankruptcy Appellate Panel Judge. Buckeye Retirement Co. ("Buckeye") appeals the bankruptcy court's order denying its motion for summary judgment and granting summary judgment in favor of the debtor Ralph Swegan ("Debtor") on Buckeye's complaint seeking an order denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A). Because the Panel disagrees with the bankruptcy court's restrictive application of "concealment" within the context of § 727(a)(2)(A) and determines that a genuine issue of material fact exists as to whether the Debtor had the requisite intent to "hinder, delay, or defraud" Buckeye in its collection efforts, the order granting the Debtor summary judgment will be reversed and the adversary proceeding remanded for trial.

## I.   ISSUE ON APPEAL

The issue in this appeal is whether summary judgment was warranted in favor of the Debtor and against Buckeye on its complaint seeking a denial of the Debtor's discharge under 11 U.S.C. § 727 (a)(2)(A). To answer this question, we must determine whether the Debtor's false answers to questions at a state court debtor's examination constitute concealment under § 727 (a)(2)(A).

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and a final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order granting summary judgment for the defendant is a final order. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798 (B.A.P. 6th Cir. 2007).

The bankruptcy court's final order denying Buckeye's motion for summary judgment and granting the Debtor's motion is reviewed de novo. *Gold v. FedEx Freight East, Inc. (In re*

*Rodriguez)*, 487 F.3d 1001, 1007 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *In re Morgeson*, 371 B.R. at 800.

### III.   FACTS

Buckeye initiated an adversary proceeding seeking to deny the Debtor a discharge based on his failure or refusal to accurately answer certain questions at a state court debtor's examination. After a hearing on the parties' cross motions for summary judgment, the bankruptcy court granted summary judgment in favor of the Debtor on the basis that the Debtor's actions at the examination did not constitute concealment under 11 U.S.C. § 727 (a)(2)(A).

The Debtor was the sole principal owner of Steelcraft Inc. ("Steelcraft") from May 1991 until February 2002 when the business closed. During its operation, Steelcraft obtained from Second National Bank a business loan that was personally guaranteed by the Debtor. Steelcraft defaulted on the loan, and the Debtor was called upon to pay as the guarantor. After the Debtor failed to pay the loan, Second National Bank obtained a judgment against him for $436,107.84. The judgment was subsequently assigned to Buckeye.

Buckeye then began state court proceedings in Mahoning County, Ohio to collect on the judgment. On June 13, 2002, Buckeye filed a writ of execution against the Debtor's vehicle. On September 2, 2002, the Debtor transferred title of the vehicle to his daughter.[1] Buckeye next obtained an order for the Debtor to appear for a debtor's examination. The order directed the Debtor to testify regarding his property, but did not order him to testify regarding income or to produce any documents. Counsel for Buckeye, however, informally requested that the Debtor produce a number of documents at the examination.

---

[1] According to the Debtor's affidavit attached to his motion for summary judgment, the parties were negotiating a settlement regarding the execution on the vehicle at this time. The Debtor had forwarded $3,000 to his attorney to resolve the issue. Believing the settlement complete, the Debtor made the title transfer to his daughter who he asserts was the primary driver of the vehicle. Apparently, however, the settlement agreement had not been completed. These allegations were not stipulated to by Buckeye, but it offered no evidence to refute them.

The Debtor's examination took place on May 20, 2003. The examination was apparently contentious and rife with objections by Debtor's counsel. During the course of the lengthy examination, counsel for Buckeye asked the Debtor whether he had received proceeds of a life insurance policy as a result of his late wife's death. The Debtor was also asked whether he had any policies insuring his own life. The Debtor answered "no" to both questions. At the instruction of his lawyer, the Debtor also did not respond to a number of questions regarding his income and employment. His attorney entered objections to those questions based upon the failure of the examination order to require the Debtor to testify regarding his income. Additionally, the Debtor did not produce any of the documents requested by counsel for Buckeye. After approximately three hours, the parties agreed to continue the examination at a later date.

Buckeye then filed a motion to show cause in the Mahoning County Common Pleas Court for the Debtor's refusal to fully answer questions concerning his property, income or other means of satisfying the judgment against him. The state court overruled the Debtor's objections to the questions posed at the examination and instructed the parties to confer and agree as to how and when the examination would be completed. The parties came to an agreement that included the production of certain documents and the rescheduling of the examination. The Debtor, however, did not produce the documents or reschedule the examination, prompting Buckeye to file a renewed motion to show cause and the state court to issue an order directing the Debtor to show cause at a hearing on November 6, 2003.

The Debtor preempted the state court show cause hearing by filing on November 4, 2003, a petition for relief under chapter 13 of the Bankruptcy Code.[2] The Debtor's schedules and statement of financial affairs were not filed with the petition. Debtor's counsel twice sought an extension of time to file schedules, the Statement of Financial Affairs, and a chapter 13 plan. The requests were granted, and the Debtor filed and served the missing schedules on January 20, 2004. On Buckeye's motion, the Debtor's case was subsequently converted to a chapter 7 case on February 12, 2004, due

---

[2] Because the Debtor filed his bankruptcy petition prior to October 17, 2005, the case is governed by the Bankruptcy Code without regard to the amendments made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1330 (2004), unless otherwise specifically noted.

to the Debtor's ineligibility to be a chapter 13 debtor because the unsecured debt to Buckeye exceeded the limitation of 11 U.S.C. § 109(e).

Contrary to the Debtor's testimony at the May 20, 2003 examination, the schedules that the debtor filed listed a life insurance policy valued at $58,900 and an annuity death benefit. The Debtor was the beneficiary of a last survivor life insurance policy that insured the Debtor and his late wife who died on June 24, 2002. Upon her death, the Debtor elected to receive the $100,000 death benefit in 60 monthly installments. The death benefit was transferred to an annuity to purchase a settlement certificate for monthly payments. Pursuant to the settlement certificate, the Debtor was to receive monthly payments of $1,756.83 from June 24, 2002, to May 24, 2007. The first two payments were mailed to him on August 7, 2002. The Debtor also held a policy insuring his own life which had a substantial cash value.[3] On January 21, 2004, eight months after the examination at issue, the Debtor executed a designation of beneficiary form, designating his current wife as the beneficiary of his life insurance policy.

On December 23, 2004, Buckeye filed a complaint seeking to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A). Buckeye alleged that, within one year of the petition date, the Debtor concealed property with the intent to hinder, delay or defraud Buckeye.[4] Upon considering the parties' cross motions for summary judgment, the bankruptcy court issued on February 6, 2007, a memorandum opinion and order denying Buckeye's motion for summary judgment and granting summary judgment in favor of the Debtor. Finding that "concealment," as used in 11 U.S.C. § 727(a)(2)(A), "implies more than mere lack of full disclosure, but encompasses a debtor's retention of some interest after divestiture of legal ownership," the bankruptcy court held that the Debtor's failure or refusal to answer certain questions at the state court debtor's examination did not constitute

---

[3] While the record reflects that as of July 29, 2004, the life insurance policy had a death benefit of $560,334, an accumulated cash value of $60,333.54, and a cash surrender value of $45,573.54, the exact benefits and values at the time of the Debtor's examination on May 20, 2003, are not in the record.

[4] Buckeye also asserted that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) because the Debtor knowingly and fraudulently made a false oath in connection with filing his schedules. Buckeye, however, did not include this issue in its statement of issues filed in accordance with Rule 8009 or in its brief as required by Rule 8010(a)(C). *See* Fed. R. Bankr. P. 8009 and 8010. Accordingly, the Panel deems this issue abandoned.

concealment. (Appellant's App. at 460.)[5] Furthermore, based upon the subsequent disclosure of the life insurance policies on his schedules filed on January 20, 2004, the bankruptcy court found no reasonable inference that the Debtor intended to hinder, delay or defraud Buckeye. Finally, the court found Buckeye's reliance on the Debtor's answers to a few questions at the debtor's examination insufficient to warrant denial of the Debtor's discharge.

On February 14, 2007, Buckeye filed a motion for reconsideration that reiterated its original arguments and cited additional, but not new, case law in support of its position. On March 1, 2007, the bankruptcy court issued a memorandum opinion and order denying the motion for reconsideration. Buckeye then timely perfected this appeal on March 7, 2007. *See* Federal Rule of Bankruptcy Procedure 8002(b).

## IV.   DISCUSSION

Summary judgment in adversary proceedings is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. As previously recognized by the BAP on several occasions, the Court of Appeals for the Sixth Circuit has described the standard to grant a motion for summary judgment as follows:

> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of

---

[5] The bankruptcy court also found that "although the Debtor may have been *entitled* to the proceeds of the life insurance policy on his wife, as Buckeye argues, there is no evidence to contradict Debtor's answer at the debtor's examination that he had *not received* such proceeds." (Appellant's App. at 463.)   However, while the Debtor denied receiving "any money from that policy himself" in his motion for summary judgment (Appellant's App. at 402), he did not deny receipt of the proceeds in his brief or at oral argument before this Panel. Moreover, contrary to the bankruptcy court's finding, Buckeye presented evidence of the Debtor's receipt of the proceeds prior to the examination. Buckeye presented correspondence from Ohio National Financial Services evidencing that a death benefit of $100,000 had been approved and was transferred to an annuity to purchase a Settlement Certificate for monthly payments for five years. The correspondence stated that the first two payments had been mailed to the Debtor on August 7, 2002, which was nine months before the examination. Buckeye also presented the Settlement Certificate, which stated that the Debtor was to receive 60 monthly installments of $1,756.83 from June 24, 2002, to and including May 24, 2007. The Debtor did not dispute the authenticity or the accuracy of these documents and the facts they established.

evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (B.A.P. 6th Cir. 1998) (quoting *Hall v. Tollett,* 128 F.3d 418, 421-22 (6th Cir.1997)) (internal citations omitted) (alterations in *Gibson*).

A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (citation omitted). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. Am. Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994) (citations omitted).

The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts (citations omitted). Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987)).

Buckeye asserts that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A) because the Debtor concealed property within one year before filing his petition when at the examination on May 20, 2003, he denied receiving the proceeds of his wife's life insurance policy and having a policy on his own life. Additionally, Buckeye contends that the Debtor's refusal at this examination to answer any questions as to his income and employment and his failure to bring the requested documents constitute concealment under § 727(a)(2)(A).

Section 727 reads, in pertinent part:
(a) The court shall grant the debtor a discharge, unless–
          . . . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed–
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A). This section is to be liberally construed in favor of the debtor, and the party objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)*; Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994); *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999).

A.      *Did the Debtor "Conceal" Property*?

Buckeye asserts that the undisputed facts meet the test set forth in *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 449 (D.N.D. 1996), regarding a § 727(a)(2)(A) action to deny the debtor a discharge. While the *Craig* test is not binding on this Panel, it does provide a convenient framework for analyzing an action to deny the Debtor's discharge under § 727(a)(2)(A) and is not in conflict with Sixth Circuit law. The *Craig* test requires that: (1) the Debtor conceal assets within one year of the petition date; (2) the act of concealment be performed by the Debtor; (3) the act consist of a transfer, removal, destruction or concealment of the Debtor's property; and (4) the act be done with the intent to hinder, delay and/or defraud either a creditor or officer of the Debtor's estate. *Id*.

Indeed, the undisputed facts meet the first two elements of the *Craig* test. The alleged concealments took place within one year of the filing of the Debtor's petition for relief and were performed by the Debtor. However, the third element, which in this case turns on the meaning of "concealment," is not so clear.

Buckeye asserts that for purposes of § 727(a)(2)(A) concealment can simply be a lack of full disclosure. The bankruptcy court found that the inclusion of concealment in § 727(a)(2)(A) with the affirmative acts of transfer, removal, destruction and mutilation, "implies more than mere lack of full disclosure, but encompasses a debtor's retention of some interest after divestiture of legal ownership." (Appellant's App. at 459-60.)

The word "concealment" is not defined in the Bankruptcy Code, and it has not been defined the Court of Appeals for the Sixth Circuit. The court did state in *Keeney* that § 727(a)(2)(A)

"encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *In re Keeney*, 227 F.3d at 683 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). At issue in *Keeney* was the legitimacy of the continued concealment doctrine, whereby "a transfer made and recorded more than one year prior to [bankruptcy] filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing." *Id*. at 684. Because the court of appeals' discussion pertained to whether the debtor's conduct fell within § 727(a)(2)(A)'s one-year requirement, we do not read the opinion to hold that concealment for purposes of § 727(a)(2)(A) requires a disposition of property. Instead, the court's linkage of concealment with disposition of property was simply recognition that concealment allegations typically arise in the context of a debtor who transferred title to property in order to hinder, delay, or defraud a creditor while retaining some benefit of ownership. *See, e.g., In re Craig*, 195 B.R. at 449 ("Asset concealment is *typically* found to exist where the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued." (emphasis added.)); *Ransier v. McFarland (In re McFarland)*, 170 B.R. 613, 628 (Bankr. S.D. Ohio 1994) ("Concealment of property for purposes of 11 U.S.C. § 727(a)(2)(A) *generally* involves the transfer of legal title of that property . . . with the debtor retaining the benefits of ownership in the property." (emphasis added)).

In cases where there has *not* been a transfer of property, courts have defined concealment as including the withholding of knowledge or information required by law to be made known. *See, e.g., Peterson v Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999) (defining concealment as "'preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known'" (quoting *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984)).[6]

---

[6] *See also U.S. Trustee v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005) (concealment includes withholding information required by law to be made known); *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, (Bankr. N.D. Ohio 1998) ("Concealment, in an action brought under § 727(a)(2)(B), simply means withholding knowledge of an asset by the failure or refusal to divulge owed information."); *Fourmigue v. Seeber (In re Seeber)*, Adv. Pro. No. 04-1061, 2005 WL 4677823, *2 (Bankr. E.D. La. July 5, 2005) (same); *Allied Domecq Retailing USA v. Schultz (In re Schultz)*, Adv. Pro. No. 99-1351, 2000 WL 575505, *6 (Bankr. N.D. Ohio April 21, 2000) ("Concealment, in this context, includes an attempt to prevent the discovery of property and the withholding of information which a debtor is required by law to reveal.").

To restrict the meaning of concealment in § 727(a)(2)(A) to a debtor's retention of some interest in property after divestiture of legal ownership would effectively write the word out of the statute, since the word "transfer" is already included in the statute. To give effect to each word in the statute, as we must, we conclude that concealment as used in § 727(a)(2)(A) includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S. Ct. 1011, 1015 (1992) ("[S]tatute must, if possible, be construed in such form that every word has some operative effect.").

Applying this standard to the case at hand, the Debtor was required by law to answer correctly any questions he answered when he was under oath at the state court debtor's examination. His false answers to the questions of whether he had received any life insurance proceeds as a result of his wife's death and whether he had any policies insuring his own life constitute concealment under § 727(a)(2)(A). Accordingly, the bankruptcy erred when it granted the Debtor summary judgment on this issue. On the other hand, we find no error in the bankruptcy court's conclusion that the Debtor's failure to answer questions regarding his income and employment and to bring the requested documents to the state court debtor's examination constituted concealment. The order regarding the debtor's examination only directed the Debtor to appear to testify regarding his property and there was no court order requiring the production of documents. Under these facts, it can not be said that the Debtor withheld information "required by law to be made known."

B.      *Did the Debtor Intend to Hinder, Delay or Defraud Buckeye*?

In addition to proving that the Debtor's actions constitute concealment, Buckeye must show that the Debtor's act of concealment was done with the intent to hinder, delay, or defraud. *In re Keeney*, 227 F.3d at 683 (requiring a subjective intent on the debtor's part to hinder, delay, or defraud a creditor); *see also In re Craig*, 195 B.R. at 448 (fourth element of test requires act of concealment be done with intent to hinder, delay, or defraud creditor). To do so, Buckeye must prove that the Debtor possessed an actual intent to deceive. *Roberts v. Montgomery (In re Montgomery)*, Adv. Pro. No. 05-3099, 2007 WL 625196, *2 (Bankr. E.D. Tenn. Feb. 27, 2007) ("Section 727(a)(2)(A) requires proof of actual fraudulent intent, as constructive fraud will not suffice."). Proving the requisite actual intent with direct evidence is difficult. However, intent may be inferred through circumstantial evidence. *In re Keeney*, 227 F.3d at 684 (citing *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998)).

Courts must be cautious in determining issues that involve a person's state of mind when deciding a case at the summary judgment stage. *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990), *vacated on other grounds,* 501 U.S. 294, 111 S. Ct. 2321 (U.S. 1991). Cases involving state of mind issues are not always inappropriate for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). However, "summary judgment is particularly inappropriate" when an individual's intent is at issue. *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002) (quoting *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir. 1986)). Even where intent is at issue, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side . . . ." *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999) (quoting *Newman v. Checkrite Cal. Inc.*, 912 F. Supp. 1354, 1380 (E.D. Cal. 1995)). In this case, however, as discussed below, all "reasonable inferences" do not necessarily "defeat the claims of one side." Because there is a genuine dispute as to the material issue of the Debtor's intent, summary judgment in favor of the Debtor was inappropriate.

Buckeye asserts that circumstantial evidence established a "pattern of wrongful behavior" on the part of the Debtor which demonstrated his actual intent to hinder, delay or defraud it. Buckeye points specifically to the following actions: (1) the Debtor's transfer of ownership of his vehicle upon which Buckeye had caused a writ of execution to be issued; (2) the Debtor's failure to produce any documents at the debtor's examination on May 20, 2003; (3) the Debtor's refusal, through his counsel's objections and instructions, to answer questions at the examination regarding his income and employment; (4) the Debtor's failure to produce documents and reschedule his examination after being ordered by the state court to do so; and (5) the Debtor's change of beneficiary on his life insurance policy to his current wife eight months after the state court debtor's examination. Buckeye argues that this conduct of the Debtor, when viewed together, leads to the conclusion that the Debtor falsely testified regarding the life insurance policies with the requisite intent to hinder, delay, or defraud Buckeye.

The bankruptcy court found that the Debtor lacked fraudulent intent because he reasonably relied on his counsel in refusing to answer questions concerning his income and employment, and he ultimately disclosed the life insurance policies on his schedules filed on January 20, 2004. Each time counsel for Buckeye asked the Debtor a question that could be construed as relating to income, the Debtor's counsel instructed him not to answer. Generally, reliance on counsel can show that the

Debtor lacked the requisite intent required to deny his discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986). However, such reliance must be reasonable and in good faith. *Id*.; *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994); *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 629 (B.A.P. 6th Cir. 2000); *In re Colvin*, 288 B.R. 477, 483 (Bankr. E.D. Mich. 2003) ("[R]eliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith."). Because the examination did not require the Debtor to testify regarding income and employment, but rather property only, the bankruptcy court's conclusion that the Debtor's reliance on his counsel's advice and instructions was reasonable and in good faith was not clearly erroneous.

However, the Debtor's subsequent disclosure of the life insurance policies on his schedules did not simply undo his concealment of the policies at the examination. "[M]ere disclosure of actions prohibited by Sec. 727(a)(2)(A) will not prevent denial of discharge." *March v. Sanders (In re Sanders)*, 128 B.R. 963, 971 (Bankr. W.D. La. 1991) (citing *Davis v. Davis (In re Davis)*, 911 F.2d 560 (11th Cir. 1990)); *Matter of Smiley*, 864 F.2d 562, 566 (7th Cir. 1989)).[7] The examination at which the Debtor gave the false answers regarding the life insurance policies took place in May 2003. He did not disclose the policies until January 2004, eight months later. Nevertheless, relying on a decision of the Court of Appeals for the Ninth Circuit, the bankruptcy court found that, "[e]ven if, arguendo, Debtor at one point concealed these assets, '. . . concealment may be undone simply by disclosing the existence of the property . . . .' *In re Adeeb*, 787 F.2d at 1345." (Appellant's App. at 463.)

In *Adeeb,* a debtor who was suffering financial difficulties and demands from creditors transferred assets to friends for no consideration. Later, upon the advice of a bankruptcy attorney, he began to retrieve the transferred assets and notify his creditors of what had transpired. Before he completed the re-transfers and within one year of the original transfers, several of his creditors filed an involuntary petition against him. The debtor then filed a voluntary petition, and several creditors sought to bar his discharge pursuant to § 727(a)(2)(A). The Court of Appeals for the Ninth Circuit

---

[7] "A debtor who first foils creditors by secreting assets, and then repents, pits the fundamental 'fresh start' purpose of the Code, requiring liberal construction in favor of the debtor, against the 'clean hands' maxim." *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 732 (B.A.P. 9th Cir. 1999) (citing *Martin v. Bajgar (In re Bajgar)*, 104 F.3d 495, 498 n.1 (1st Cir. 1997)).

interpreted the term "transfer" in § 727(a)(2) to "mean transferred and remained transferred" because, they concluded, Congress intended to deny discharge only to debtors who try to keep assets hidden "until after they obtain their discharge in bankruptcy." *In re Adeeb*, 787 F.2d at 1344-45. Treating the debtor as the subject of an involuntary petition because the bankruptcy process was begun by the involuntary petition, the court granted the debtor a discharge. *Id.* at 1346.

The *Adeeb* court further held that its conclusion was consistent with cases, interpreting concealed as used in § 727(a)(2)(A), which state that a "'debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors.'" *Id*. at 1345 (quoting *Pohl Constr. Co. v. Waddle (In re Waddle)*, 29 B.R. 100, 103 (Bankr. W.D. Ky. 1983), and 4 *Collier on Bankruptcy* ¶ 727.02[6][b] (15th ed. 1985)). The court then concluded by stating that "[a]lthough a concealment may be undone simply by disclosing the existence of the property, disclosure does not undo a transfer. However, a transfer may be undone by recovering the property." *Id.* at 1345.

The *Adeeb* court's statement that concealment may be undone simply by disclosing the existence of the property is questionable at best and, at a minimum, not applicable here. *See, e.g., Village of San Jose v. McWilliams*, 284 F.3d 785, 792 (7th Cir. 2002) ("*Adeeb*, as other courts have concluded, appears to contravene the plain language of the Code. . . . *Adeeb's* holding was limited to involuntary petitions, and any commentary on voluntary petitions was dicta."); *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 734 (B.A.P. 9th Cir. 1999) ("None of [the cases cited by *Adeeb*] holds that disclosure of secreted assets at or before the § 341 meeting precludes finding intent to hinder, delay or defraud, and we will not extend *Adeeb* so far.").[8] Therefore, the Debtor's subsequent disclosure of the assets on his schedules eight months after he falsely denied their

_____

[8] As noted by the Bankruptcy Appellate Panel for the Ninth Circuit in *Beauchamp*, the authorities cited by *Adeeb* for the proposition that concealment can be undone by disclosure do not so hold. The court in *Waddle* "mentioned in passing that a debtor might avoid the penalty of [§ 727(a)] by reporting concealed assets at the meeting of creditors: at most, dicta of insignificant moment. *See Waddle*, 29 B.R. at 103." *In re Beauchamp*, 236 B.R. at 733. Additionally, in the two cases cited by both *Waddle* and the edition of *Collier* cited by *Adeeb* for this proposition, the courts found no fraudulent transfer of property belonging to the estate. *Id*. (citing *Barrett v. Doody (In re Doody)*, 92 F.2d 653 (7th Cir. 1937), and *Thompson v. Eck*, 149 F.2d 631 (2nd Cir. 1945)). Finally, the revised edition of *Collier* no longer contains the text referenced by *Adeeb*. *Id*. (citing 6 L. King, *Collier on Bankruptcy* ¶ 727.02, at 727-13 to 727-26.1 (15th ed. rev. 1998)).

existence at the examination under oath does not undo the concealment and does not prevent an inference of intent.

The Debtor asserts that he was unsure of the status of the life insurance policies at the time of the examination and was confused by the questions of counsel, the numerous objections, and the tone of the questioning of Buckeye's attorney. He offered an affidavit in support of his motion for summary judgment that states, in pertinent part:

> 9. I appeared at a May 20, 2003 debtor exam represented by Attorney Walker. It is my understanding that Buckeye's Attorney requested numerous documents in a May 9, 2003 letter to be produced at the debtor's exam which I was unable to produce at that time. The debtor's exam was to be rescheduled to my understanding, after I testified to what was available at the time for approximately 3 hours.

> 10. Attorney Walker, my counsel, objected to various questions at the debtor's exam as they related to income in his viewpoint and not property of mine. A copy of the order for debtor's exam indicated I should testify as to property but said nothing about testifying as to income is attached.

> 11. I testified that I did not receive life insurance proceeds from the passing of my ex-wife Deborah, as I did not, the policy in questions [sic] being a Last Survivor Policy which was rolled over into my name. I was unsure of the status of the policy and Last Survivor feature at said time and was confused by the questions, especially in light of the numerous objections and the tone of the questioning of Buckeye's attorney.[9]

(Appellee's App. at 33.)

The summary judgment record contradicts the Debtor's self-serving affidavit. The Debtor testified at the Rule 2004 examination on August 23, 2004, that on July 26, 2002, he chose to receive the proceeds of his late wife's life insurance policy through the purchase of an annuity with 60 monthly installments and that he began receiving payments shortly thereafter which he used to pay living expenses. (Appellant's App. at 331-32, 337.) The fact that the Debtor had been receiving monthly annuity payments for ten months prior to his May 2003 state court examination belies his claim that he was simply confused at the examination. Additionally, the Debtor's own life insurance policy had a substantial cash value and death benefit. It is difficult to believe that he was unsure of

---

[9] While there were numerous intervening objections and exchanges between counsel, the questions at issue were straightforward. "Q. Did you receive the proceeds of that life insurance policy? A. No." (Appellant's App. at 91-92.) "Q. You don't have any life insurance policies on your own life at this time? A. No." (Appellant's App. at 103.)

the status of a policy with an approximate $500,000 death benefit and an approximate $45,000 to $60,000 cash value.

Construing this evidence in the light most favorable to Buckeye and drawing all reasonable inferences in its favor in the context of ruling on the Debtor's summary judgment motion creates a genuine issue of material fact as to whether the Debtor had the requisite intent to hinder, delay, or defraud. Therefore, the bankruptcy court's order granting the Debtor's motion for summary judgment is reversed and remanded for a trial on the issue of intent.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order, to the extent it granted summary judgment in favor of the Debtor, is REVERSED and REMANDED.