NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0911n.06

No. 14-5212

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 08, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| THOMAS EIFLER, | ) |
| | ) |
| Plaintiff-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE WESTERN |
| | ) DISTRICT OF KENTUCKY |
| WILSON & MUIR BANK & TRUST CO., | ) |
| | ) |
| Defendant-Appellee. | ) |

BEFORE: KEITH, MOORE, and STRANCH, Circuit Judges

**DAMON J. KEITH, Circuit Judge.** Thomas Eifler appeals the decision of the district court, which affirmed the judgment of the bankruptcy court. Below, Mr. Eifler was denied a discharge of $1,701,793.66 owed to Wilson & Muir Bank & Trust Company ("Wilson & Muir") under 11 U.S.C. §§ 727(a)(2)(A) and (a)(4). Section 727(a)(2)(A) allows denial of discharge if a debtor, within one year of the bankruptcy filing, "transferred, removed, destroyed, mutilated, or concealed" his property or property of the estate with the "intent to hinder, delay or defraud a creditor[.]" Section 727(a)(4), on the other hand, warrants denial if a debtor makes false statements under oath in connection with a bankruptcy proceeding, e.g., lists false information on a bankruptcy schedule. Following a five day trial, the bankruptcy court held that each subsection of 727(a)—independently—warranted denial of discharge. Specifically, the bankruptcy court found that that Mr. Eifler employed a scheme to defraud creditors by siphoning money out of his bank accounts and made fraudulent statements in support of his petition and during trial to cover

his tracks. On appeal, Mr. Eifler asserts that he relied on the advice of counsel; he did not intend to defraud Wilson & Muir. For the following reasons, we **AFFIRM.**

## I.  BACKGROUND

The uncontroverted facts establish that in 2006, Mr. Eifler created several crane and hoist limited liability companies ("Crane Companies"). The next year, Mr. Eifler expanded his banking relationship with Wilson & Muir. He applied and was approved for three commercial loans, totaling $1,680,289.15: (1) May 11, 2007, $598,242.00, (2) June 7, 2007, $730,152.15, and (3) December 24, 2007, $351,895.00. Each loan was guaranteed by Mr. Eifler personally, in addition to the company that received the loan. Mr. Eifler also opened a home equity line of credit ("HELOC") in his name only with Wilson & Muir that was secured by his primary residence that he shared with his wife and three children. At its peak, the HELOC had a credit limit of $700,000.00. Although Mrs. Eifler did not hold title to the property, both Eiflers signed the mortgage securing the HELOC. The couple also opened a checking account with Wilson & Muir.

On September 22, 2009, Mr. Eifler—without prior notice to Wilson & Muir—transferred title to the property which secured the HELOC to Mrs. Eifler. Mr. Eifler documented this transfer on a subsequent Wilson & Muir document, but did not inform Wilson & Muir of the transfer even though he used the property to secure the HELOC.

By 2010, the Crane Companies were spending cash reserves and operating at a net loss. Despite Mr. Eifler's lack of income, on October 25, 2010, he withdrew the remaining $340,000.00 from the HELOC. Mr. Eifler deposited the $340,000.00 in the Wilson & Muir account. That same day: (1) Mr. Eifler opened two new joint accounts at Commonwealth Bank

("Commonwealth") and Fidelity Investments ("Fidelity"); and (2) he drew from the Wilson & Muir account to deposit the $340,000.00 in the Commonwealth account.

On November 1, 2010, Mr. Eifler then met with the President of Wilson & Muir to inform him that the Crane Companies could not repay the debt. When asked about the $340,000.00, Mr. Eifler told him that the money was in his Commonwealth account. The next day, on November 2, 2010, Mr. Eifler moved the funds from Commonwealth to the Fidelity account. Mr. Eifler did not inform Wilson & Muir that he had a Fidelity account or that he moved the funds from Commonwealth.

In December 2010, Mr. Eifler hired attorney Tom Frentz. Mr. Eifler testified that he hired Frentz to work out the Crane Companies' debt; his testimony at trial was that he did not seek bankruptcy advice until November 2011. Contrary to Mr. Eifler's sworn testimony, Frentz's time sheets and billing records show that Frentz began work in preparation for Mr. Eifler's bankruptcy in January 2011, almost a year before Mr. Eifler filed bankruptcy and less than three months after the $340,000.00 had been transferred to three accounts.

On February 23, 2011, Wilson & Muir filed an action in state court to collect the debt owed on the HELOC and commercial loans. On February 28, 2011, Frentz, again, billed Mr. Eifler for bankruptcy research. Rather than answering the Wilson & Muir Complaint, on March 4, 2011, Mr. Eifler opened two new individual accounts at Fidelity. One of the individual accounts was in Mr. Eifler's name and the other in his wife's; Mr. Eifler managed both accounts. On March 29, 2011, Mr. Eifler split the HELOC money equally, $179,927.81, respectively, and deposited the money into their individual Fidelity accounts. Frentz testified that he advised Mr. Eifler to make this transfer, but that he did not know that only Mr. Eifler, not Mrs. Eifler, was

liable on the HELOC. After the HELOC money was divided equally, on April 1, 2011, Mr. Eifler filed an answer to Wilson & Muir's action.

For the first time during their fifteen years of marriage—Mr. Eifler began to divide his income equally with his wife:

1. In May 2011, federal and state income tax refunds were directly deposited into the joint Commonwealth account. Mrs. Eifler wrote a check for half of the refund ($41,825.00) made payable to her. The money was deposited into her Fidelity account;

2. On June 5, 2011, Mr. Eifler transferred $5,000 to his wife's Fidelity account;

3. On December 15, 2011, Mr. Eifler transferred half of his paycheck to his wife in the amount of $28,234.38; and

4. The final transfer to his wife's account was on December 22, 2011, in the amount of $3,613.12, half of his pay check.

While Mr. Eifler deposited large sums of money into his wife's account, he used only *his* Fidelity account to make large transfers, thereby depleting his funds:

1. On July 7, 2011, he wired $20,000 to his wife's sister internationally;

2. On December 15, 2011, Mr. Eifler made a $12,000.00 high school tuition payment, which was nine months in advance;

3. On December 16, 2011, Mr. Eifler made a $16,900.00 middle school tuition payment, which was also nine months in advance; and

4. December 16, 2011, Mr. Eifler made an additional $16,175.00 middle school tuition payment; this payment was also nine months in advance.

On December 29, 2011, roughly nine months after Eifler began spending the $340,000.00, he filed bankruptcy. At the time of his filing, there was only $22.04 in his Fidelity account, compared to $103,786.73 in his wife's Fidelity account.

The bankruptcy schedule that Mr. Eifler submitted on January 12, 2012, omitted his: (1) Fidelity account, (2) joint, but closed Fidelity account (3) Forex.com investment, and (4) Wilson & Muir account. Mr. Eifler disclosed only the joint Commonwealth account, reporting that he had only $521.00 in it. The Forex.com account had only $2.34 when Mr. Eifler's bankruptcy petition was filed, but bank records show that on December 5, 2011, less than two weeks before filing, $2,801.41 was withdrawn from it. Mr. Eifler did disclose the Forex.com account during trial, and says that he did not believe he was required to list the others. Mr. Eifler does not recall the December 5, 2011 withdrawal.

The bankruptcy schedule also omitted the: (1) March 29, 2011 transfer of $179,927.81, (2) May 3, 2011 transfer of $41,825.00, (3) July 7, 2011 gift of $20,000.00, (4) three tuition payments totaling $45,075.00, (5) December 15, 2011 transfer of $28,234.38, and (6) December 22, 2011 transfer of $3,613.12.

On June 14, 2012, the Wilson & Muir filed an adversary proceeding in bankruptcy court, seeking to, among other things, prohibit discharge under several provisions of the Bankruptcy Code, including 11 U.S.C. §§ 523(a)(2)(A) & (B), 523(a)(6), 727(a)(2)(A), 727(a)(4) and 727(a)(5).

After five days of trial, the bankruptcy court entered judgment on July 1, 2013, against Mr. Eifler, denying the discharge of debt under §§ 727(a)(2)(A) and 727(a)(4) of the Code. On July 15, 2013, Mr. Eifler appealed to the district court. On January 28, 2014, the district court affirmed the decision of the bankruptcy court. Mr. Eifler appeals.

## II.    STANDARD OF REVIEW

"On appeal following the district court's review of the bankruptcy court's decisions, we review the bankruptcy court's orders directly rather than the intermediate decision of the district court." *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 411 (6th Cir. 2013) (citing *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 319 (6th Cir. 2006)). "We review the legal conclusions *de novo* and any factual findings for clear error." *Id.*

## III.    ANALYSIS

Contingent on several findings of fact, the bankruptcy court denied Mr. Eifler a discharge under §§ 727(a)(2)(A) and (a)(4)(A).  Section 727(a) allows bankruptcy court to discharge a debt with four exceptions—two of which are at issue in this case.  Section 727(a)(2)(A) precludes a discharge where:

> (2) *the debtor, with intent to hinder, delay, or defraud a creditor* or an officer of the estate charged with custody of property under this title, *has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–*
>     (A) property of the debtor, within one year before the date of the filing of the petition;  or
>     (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. §§ 727(a)(2) (emphasis added).  Additionally, § 727(a)(4)(A) precludes a discharge where "the debtor knowingly and fraudulently . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

### A.  False Oaths--§ 727(a)(4)(A)

We will first address the bankruptcy court's determination that Mr. Eifler made false oaths and accounts by failing to disclose several transfers and accounts.  *See* § 727(a)(4)(A).  Mr. Eifler concedes that he did not disclose the transfers to his wife, the tuition payments, the gift to

his sister-in-law and four bank accounts, which he admits may, generally, be a violation of § 727(a)(2). He defends against all nondisclosures except the accounts, arguing that failure to disclose accounts with nominal funds in them, alone, does not meet the harsh consequence of § 727(a)(4).

Under § 724(a)(4)(A), discharge will be denied if: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). "Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact" that we review for clear error. *Id.*

The bankruptcy court is the finder of fact, and we review its factual findings for clear error. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998). "A factual finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* The bankruptcy court found that Mr. Eifler made ten material false oaths regarding money transfers and accounts: (1) the $177,000.00 transfer to Mrs. Eifler; (2) the transfer to Mrs. Eifler of half of Mr. Eifler's tax refund; (3) the December 15, 2011 salary transfer to Mrs. Eifler; (4) the December 22, 2011 transfer to Mrs. Eifler; (5) the $20,000 transfer to Mr. Eifler's sister-in-law; (6) the tuition pre-payments; (7) the Fidelity brokerage account; (8) the Joint Fidelity account; (9) the Forex currency trading account; and (10) Mr. Eifler's statements at the 341 meeting. The bankruptcy court found that that all of these

omissions satisfy the § 724(a)(4)(A) requirements, and we find no reason to disturb the bankruptcy court's findings of fact.

These errors of omission involved material facts about Mr. Eifler's existing assets and the disposition of his assets before the bankruptcy proceeding. The bankruptcy court inferred that Mr. Eifler omitted this relevant information with fraudulent intent because of the number of omissions and the pattern of false statements. As the finder of fact, the bankruptcy court is in the best position to make credibility determinations. The bankruptcy court was not willing to accept Mr. Eifler's assertions that he merely forgot to include relevant information and that he relied on his attorney's advice absent independent corroboration—a credibility determination with which we do not disagree.

In addition to failing to disclose the transfers to his wife, the tuition payments, the gift to his sister-in-law and four bank accounts, Mr. Eifler also provided false testimony under oath to cover his true bankruptcy plans. At trial, Mr. Eifler testified that he did not consider bankruptcy until November 2011, but objective evidence shows that Mr. Eifler considered bankruptcy one month after the $340,000.00 HELOC withdrawal. Mr. Eifler's attorney's records show that he conducted legal research on dischargeability of debts and prepayments under the bankruptcy code on January 27, 2011 and February 28, 2011. Mr. Eifler's attorney testified that his February research concerned whether making tuition payments would preclude discharge. Less than two weeks before filing, Mr. Eifler used his account to make a total of $45,075.00 in tuition payments that were not due for another nine months. His children were not even registered for the school year to which these payments were applied. These payments brought Mr. Eifler's account to a mere $22.00. The timeline suggests, as the bankruptcy court found, that it was not

by coincidence that almost a year before filing, Mr. Eifler began researching ways that he could draw down his account without impacting discharge.

By contrast, Mr. Eifler's wife's account, which Mr. Eifler controlled, was in excess of six figures at the time of filing primarily because Mr. Eifler did not draw from his wife's account to make any of the large payments, not even the payment to her own sister. At trial, Mr. Eifler asked the bankruptcy court to believe that he made the $20,000.00 transfer from his account only because his wife did not know how to wire money. But Mrs. Eifler testified that Mr. Eifler controlled her account; therefore, he could have used it to wire the money. These circumstances support the bankruptcy court's finding that Mr. Eifler, instead, opted to use his own account. The false statements, coupled with the many nondisclosures, support the bankruptcy court's finding that Mr. Eifler intended to defraud Wilson & Muir.

Despite the material omissions and false testimony, Mr. Eifler argues that he was simply following his counsel's advice. "[R]eliance on counsel can show that the debtor lacked the requisite intent required to deny his discharge." *Buckeye Retirement Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008). To prevail on this theory, Mr. Eifler must show: (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice. *Id.*

Relying on *Hibernia National Bank v. Perez*, 124 B.R. 704 (E.D. La. 1991), the bankruptcy court held that Mr. Eifler could not invoke the reliance on counsel defense because it is "transparently plain" that disclosure of transactions is required. We, however, affirm the decision but on the ground that Mr. Eifler failed to establish that he relied on his attorney's advice. Trial testimony revealed the process that Frentz, Mr. Eifler's attorney, used in drafting

9

bankruptcy filings: Mr. Eifler first filled out the documents in pencil. Mr. Eifler's responses were then typed, after which Mr. Eifler reviewed for errors. If there were errors, the errors would have been corrected and the documents would have been reviewed again by Mr. Eifler. Frentz then reviewed the documents with Mr. Eifler. Finally, the documents were filed. This means that Mr. Eifler reviewed the filings at least three times. Yet, Mr. Eifler did not testify that he asked Frentz whether he needed to disclose the transfers and Frentz recommended that he did not need to. Rather, Mr. Eifler contends that his attorney knew about the transfers from other conversations and did not independently recognize that the transfers were missing from disclosure forms. This does not constitute full disclosure of pertinent facts to counsel, nonetheless, reliance on advice of counsel.

Further, neither Mr. Eifler nor Frentz testified that Mr. Eifler was advised not to disclose transactions. Mr. Eifler argues that Frentz told him that the transactions would likely be challenged in the bankruptcy process, not that he need no disclose them: "[Frentz] disclosed . . . that the transactions could be challenged 'when they shouldn't,' not that such challenge would be well-grounded." Implicit in Frentz's advice is the duty to disclose: a transaction cannot be challenged by creditors unless it is known.

In light of the circumstantial evidence of fraudulent intent, Mr. Eifler's failure to tell his counsel all pertinent facts, and his apparent bad faith in relying on counsel's failure to notice his omissions, the bankruptcy court was not clearly erroneous in finding that he omitted the transactions from his filings with fraudulent intent.

## B. Fraudulent Transfer--§ 727(a)(2)

The second ground on which the bankruptcy court denied dischargeability was fraudulent transfer. 11 U.S.C. § 727(a)(2). Section 727(a)(2) "encompasses two elements: 1) a disposition of property, such as concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *Keeney*, 227 F.3d at 683 (internal quotation marks omitted). The bankruptcy court found both elements. It found that Mr. Eifler made several transfers, totaling about $300,000 in the year preceding his bankruptcy filing: transferred the HELOC funds to his wife, wired substantial money to his sister-in-law, prepayment of his children's private school tuition, and transferred his wife half of two paychecks and an income tax return. And, it found that Mr. Eifler made the transfers with the actual intent to hinder his creditors. Mr. Eifler concedes that he made the transfers. He, nonetheless, argues that the bankruptcy court's finding of actual intent was clear error because he relied on the advice of counsel.

As noted above, the advice-of-counsel defense requires: (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice. *Swegan*, 383 B.R. at 656. Although the bankruptcy court concluded that Frentz advised Mr. Eifler to split the HELOC funds, pay tuition for his children, and wire his sister-in-law $20,000.00, it did not resolve whether the other transfers to Mrs. Eifler were advised. We find its reasoning sound. Even assuming that Frentz advised Mr. Eifler to make all of the challenged transactions, discharge would still be denied. There can be no cover from his attorney because Mr. Eifler did not disclose all of the pertinent facts to his attorney, and he acted on advice that had been rendered stale by changed circumstances. Frentz testified that he did not know at the time of the

transactions that the $20,000.00 gift to the sister-in-law was being wired out of Mr. Eifler's account or that Mr. Eifler controlled his wife's account. Furthermore, while Frentz admitted to advising Mr. Eifler that the transfer of HELOC funds would be permissible, he gave that advice long before Wilson & Muir filed suit against Mr. Eifler. A client, and especially a financially literate, well-educated businessman like Mr. Eifler, cannot reasonably rely on advice after the pertinent facts have changed significantly.

Even if Mr. Eifler had disclosed all transactional details to his attorney and acted before the advice went stale, § 727(a)(2) would bar discharge because sufficient evidence shows that he was acting in bad faith. "[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case." *Keeney*, 227 F.3d at 686. Mr. Eifler's intent from the inception was to retain the Wilson & Muir loan proceeds, while fully discharging the debt. When Mr. Eifler realized that his financial situation was dire, he depleted his HELOC from Wilson & Muir knowing that he could not repay it. Before meeting with Wilson & Muir to inform it that he could not repay the debt owed, Mr. Eifler opened several accounts in preparation to transfer the money. Once the money was in an account of which Wilson & Muir was not aware, Mr. Eifler sought legal advice on how to retain it while discharging the debt under the bankruptcy code. Mr. Eifler was advised to split the funds equally with his wife, and for the first time in their fifteen year marriage, Mr. Eifler deposited half of his income in his "wife's" account. Mr. Eifler then made transactions, from his account, which he thought would be unsuccessfully challenged under bankruptcy law. At filing, he failed to disclose the transactions and four out of five bank accounts, which show the transactions. Indeed, Mr. Eifler still had access to nearly half of the HELOC proceeds. The defense of reliance of counsel is not crafted to allow debtors to develop a

plan to borrow money, funnel it among several accounts with the intent to deceive, search for cover from attorneys, and then discharge the obligation to repay the funneled money in a bankruptcy proceeding.

The circumstantial evidence supported the bankruptcy court's finding of fraudulent intent with regard to the transfers. There was no clear error.

## IV.    CONCLUSION

Accordingly, and for the above-stated reasons, we **AFFIRM**.